(No. 95987.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ROBERT W. BURNS, Appellee.

*Opinion filed April 15, 2004.*

552

Lisa Madigan, Attorney General, of Springfield, and Joseph P. Hettel, State's Attorney, of Ottawa (Gary Feinerman, Solicitor General, Linda D. Woloshin, Assistant Attorney General, of Chicago, and Norbert J. Goetten, John X. Breslin and Judith Z. Kelly, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

James T. Reilly, of Streator, for appellee.

JUSTICE THOMAS delivered the opinion of the court:

At issue in this case is whether a respondent filing an application for recovery under the Sexually Dangerous Persons Act (the SDPA) (725 ILCS 205/0.01 *et seq.* (West 2000)), is entitled to an independent psychiatric examination. The appellate court reversed the La Salle County circuit court's order denying respondent's motion for an independent psychiatric exam, holding that a respondent in a recovery proceeding has a due process right to such an exam. 337 Ill. App. 3d 224. We allowed the State's petition for leave to appeal from the appellate court's decision. 177 Ill. 2d R. 315(a).

## BACKGROUND

On November 25, 1985, respondent, Robert W. Burns, was charged by information with aggravated criminal sexual abuse. Ill. Rev. Stat. 1985, ch. 38, par. 12—16. The information alleged that respondent had placed his mouth on the penis of a boy who was under the age of 13 for purposes of his own sexual arousal. Thereafter, the State filed a petition to declare respondent a sexually dangerous person under section 3 of the SDPA (725 ILCS 205/3 (West 2000)).

Under the SDPA, the State may seek an involuntary, indeterminate commitment in lieu of a criminal prosecution if a defendant is charged with a criminal offense and is believed to be sexually dangerous. See, *e.g.*, *People v. McDougle*, 303 Ill. App. 3d 509, 515 (1999). Once the State files a petition to declare the defendant sexually dangerous, the trial court must appoint two psychiatrists to examine the defendant. 725 ILCS 205/4 (West 2000). A sexually dangerous person is defined as a person who has suffered from a mental disorder for a period of not less than one year, who has criminal propensities to the commission of sex offenses, and who has demonstrated propensities toward acts of sexual assault or sexual molestation of children. 725 ILCS 205/1.01 (West 2000). Proceedings under the SDPA are civil in nature (725 ILCS 205/3.01 (West 2000)), although a defendant is entitled to counsel and may demand a jury trial on the State's petition (725 ILCS 205/5 (West 2000)). In addition, the State must prove sexual dangerousness beyond a reasonable doubt. 725 ILCS 205/3.01 (West 2000).

Respondent waived his right to a jury trial on the State's petition to declare him a sexually dangerous person. At respondent's bench trial, Detective Lieutenant Tom Templeton of the La Salle County sheriff's department testified that he arrested respondent on December 27, 1985, for aggravated criminal sexual abuse. Templeton testified that after he gave respondent his

*Miranda* rights, respondent stated that he was willing to talk and admitted that the allegations against him were true and that he had placed the victim's penis in his mouth. Respondent told Templeton that he had sexual urges toward children and that he had sexual contact with children possibly on average of one child a day for the past four years. Respondent would go to parks or would attempt to find jobs baby-sitting or cleaning houses in order to facilitate his access to children.

Dr. Carl Hamann, a medical doctor specializing in psychiatry, testified that he had examined respondent and concluded that respondent was a sexually dangerous person. Dr. Hamann testified that respondent had a psychosexual disturbance with a great immaturity that had lasted for more than a year. Respondent would be classified as a pedophile. The trial court also reviewed the deposition testimony of Dr. Myer Kruglik. The parties then stipulated that the victim, E.K., would testify that he is four years old and that before Christmas of the previous year, he was awakened by respondent "sucking his wee-wee."

At the close of testimony, the circuit court found that the allegations against respondent had been proven beyond a reasonable doubt and that respondent was a sexually dangerous person within the meaning of the SDPA. Pursuant to section 8 of the SDPA (725 ILCS 205/8 (West 2000)), the trial court ordered the Director of Corrections to take guardianship of respondent and committed respondent to the custody of the Department of Corrections (Department).

On May 14, 2001, respondent filed the application for discharge pursuant to section 9 of the SDPA (725 ILCS 205/9 (West 2000)).[1] Section 9 provides that a person committed under the SDPA may file an application at

---

[1]Although the SDPA states that a respondent shall file an "application" for recovery, courts have also used the phrase "peti-

any time showing that he has recovered and requesting that he be released. Once an application for discharge is filed, the psychiatrist, sociologist, psychologist and warden of the institution where the applicant is confined must prepare a socio-psychiatric report concerning the applicant. 725 ILCS 205/9 (West 2000). In addition, the respondent is entitled to the appointment of counsel and a jury trial on his application. *People v. Olmstead*, 32 Ill. 2d 306, 314 (1965); 725 ILCS 205/5 (West 2000). Respondent's application for discharge alleged that respondent had demonstrated that he was no longer sexually dangerous, that he had attended group therapy and posed no risk to society or himself, that he had addressed and resolved the issues that led to his offending behavior, and that he had completed his treatment.

Respondent filed several *pro se* motions along with his application for discharge, including a motion to exclude the testimony and report of Dr. Mark Carich and a motion for an independent psychiatric examination. In his motion for an independent psychiatric examination, respondent alleged that Dr. Ijaz Ahmad Jatala, a psychiatrist employed by the Department of Corrections, would not give respondent an independent examination because he was an employee of the State of Illinois and therefore would comply with the Department's desire to find that respondent was still sexually dangerous. Respondent also alleged that Dr. Jatala would not conduct an independent examination but instead would prepare a socio-psychiatric report using boilerplate language and inserting respondent's name. In his motion to exclude the testimony of Dr. Carich, respondent alleged that Dr. Carich is not a

---

tion for recovery" in discussing a section 9 application. *People v. Trainor*, 196 Ill. 2d 318, 332 (2001). In addition, the SDPA refers to a party filing a section 9 application as an applicant or a respondent, although some cases continue to use the term defendant.

psychologist and therefore could not prepare the socio-psychiatric report required under section 9 of the Act (725 ILCS 205/9 (West 2000)). Respondent further alleged that if Dr. Carich was called to testify on behalf of the State, he would give a biased report that would be misleading and would include "untrue alleged facts" concerning respondent.

The trial court denied respondent's motion to exclude Dr. Carich's report and testimony. The trial court also denied respondent's motion for an independent psychiatric examination. Citing this court's decision in *People v. Trainor*, 196 Ill. 2d 318 (2001), the trial court stated that "it couldn't be any clearer that the defendant doesn't have a right to an independent doctor." The trial court also found that respondent had failed to show bias on the part of the doctors working for the Department.

The trial court then conducted a hearing on respondent's petition. At the hearing, Dr. Carich testified that he had assessed and treated sexually dangerous persons for 10 years and had supported a respondent's application for discharge in 19 cases during that time. Dr. Carich stated that respondent had refused to be interviewed in connection with his application, so Dr. Carich based his testimony on his work with respondent since 1989 and his review of respondent's records. Dr. Carich testified that respondent had been committed for abusing more than 40 victims, both male and female, ranging in age from six months to nine years old. Dr. Carich believed that respondent was still sexually dangerous even though he had made some progress since his admission. Dr. Carich based his opinion on the fact that respondent had dropped out of his treatment program, had had sexual contact with other members of his group, and still exhibited some antisocial and borderline behaviors. Respondent also had performed poorly on a phallometric assessment for male infants, preschool

males, resisting noncompliant teen males, and child violence. Dr. Carich believed that respondent presented a high risk to reoffend if he was released at this point.

On cross-examination, Dr. Carich testified that respondent had substantially improved his phallometric scores between 1997 and 1999 and had attempted to rejoin his treatment program after dropping out. During the time respondent was a member of the treatment group, he had faithfully attended group and had dramatically improved his personal hygiene and social skills. Dr. Carich also testified that respondent had self-reported 39 of his 40 victims and had accepted responsibility for his offenses and had developed empathy for his victims.

Dr. Jatala testified that he had diagnosed respondent as suffering from pedophilia, voyeurism and exhibitionism. Based upon Dr. Jatala's review of respondent's file and his work with respondent, Dr. Jatala concluded that respondent was still sexually dangerous and would have a high risk of reoffending if released into the community. On cross-examination, Dr. Jatala acknowledged that he had seen respondent only six or seven times in the past four years.

Finally, respondent testified that he understood that his pattern of engaging in sexual behavior with younger children was wrong. Respondent did not believe he had been cured, but believed he could conduct himself properly and keep from engaging in that type of behavior. Respondent stated that he could not be around children anymore.

Following testimony and closing arguments, the jury found that respondent was still a sexually dangerous person. Accordingly, respondent was remanded to the custody of the Department.

Respondent appealed, claiming, *inter alia*, that the trial court had erred in denying his motion for an independent psychiatric examination and had erred in

denying his motion to strike Dr. Carich's report and testimony. The appellate court agreed with respondent that he had a right to an independent psychiatric examination under the due process clause of the United States Constitution. 337 Ill. App. 3d 224, 227. The appellate court noted that pursuant to *Mathews v. Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976), courts must consider three factors when considering a due process issue: (1) the liberty or property interest with which the State has interfered; (2) the risk of erroneous deprivation of the interest through the procedures already in place and the probable value of additional or substitute procedural safeguards; and (3) the effect the administrative and fiscal burdens would have on the State. 337 Ill. App. 3d at 227.

With regard to the first factor, the appellate court found that there was little question that a respondent's right to liberty is jeopardized under the SDPA. 337 Ill. App. 3d at 227. With regard to the second factor, the appellate court noted that at any stage in a commitment proceeding, a respondent is at serious risk of his liberty being erroneously deprived. 337 Ill. App. 3d at 227. Consequently, a respondent at a commitment proceeding and at a recovery proceeding must be provided the essential protections available at a criminal trial, such as the right to a jury, representation by counsel, and proof of sexual dangerousness beyond a reasonable doubt. 337 Ill. App. 3d at 227. The appellate court concluded that under notions of due process, the rights available to a respondent at a commitment or recovery proceeding include the right to an independent psychiatric examination. 337 Ill. App. 3d at 227. The appellate court reasoned that disallowing a respondent's request for an independent examination would place a respondent at an extreme disadvantage because the jury is left only with the State expert's opinion as to the respondent's mental state. 337

Ill. App. 3d at 227. The court acknowledged that a respondent can bring a motion for appointment of an independent expert at a recovery proceeding, but noted that such motions are often denied by the court because the respondent fails to provide evidence of bias or prejudice. 337 Ill. App. 3d at 228. The court found this "safeguard" inadequate, because a respondent lacks the means with which to prove bias or prejudice. 337 Ill. App. 3d at 228. The appellate court conceded that providing a committed person with an independent expert's examination would impose a significant fiscal burden on the State because there is no limitation on the number of applications for recovery or the time between each filing. 337 Ill. App. 3d at 228. However, the court stated that it was not in a position to alter such legislative oversights. 337 Ill. App. 3d at 228. Based upon its analysis of the *Mathews v. Eldridge* factors, the appellate court held that the trial court had violated respondent's right to due process in denying his request for an independent psychiatric examination. 337 Ill. App. 3d at 228.

Given its finding that the trial court should have granted respondent's motion for an independent psychiatric examination, it was unnecessary for the appellate court to address the remaining issues raised by respondent on appeal. However, for purposes of judicial economy, the appellate court elected to address respondent's challenge to Dr. Carich's testimony and report. The appellate court rejected respondent's claim that Dr. Carich's report did not satisfy section 9 of the SDPA because Dr. Carich is not a licensed psychologist. 337 Ill. App. 3d at 229. The appellate court noted that the SDPA does not impose any licensing requirements for psychologists who sign the section 9 socio-psychiatric report. 337 Ill. App. 3d at 229. In addition, Dr. Carich had been found qualified to render opinions for purposes of recovery applications in other appellate cases. 337 Ill. App. 3d at 229.

One justice dissented from the finding that Dr. Carich was qualified. 337 Ill. App. 3d at 229-30 (McDade, P.J., concurring in part & dissenting in part). The partial dissent stated that although the SDPA does not contain a licensing requirement, it does require that a respondent be assessed by a psychologist. 337 Ill. App. 3d at 229-30 (McDade, P.J., concurring in part & dissenting in part). The partial dissent noted that Dr. Carich had a bachelor's degree in psychology, but a master's degree and a doctorate in educational counseling, not in psychology. 337 Ill. App. 3d at 231 (McDade, P.J., concurring in part & dissenting in part). The partial dissent maintained that Dr. Carich was not and had never been a psychologist, and thus did not satisfy the plain language of the statute. 337 Ill. App. 3d at 231 (McDade, P.J., concurring in part & dissenting in part).

## ANALYSIS

On appeal to this court, the State argues that due process does not entitle a sexually dangerous person seeking discharge under section 9 of the SDPA to an independent psychiatric expert at the State's expense. The standard of review for determining whether an individual's constitutional rights have been violated is *de novo*. See *Patel v. Illinois State Medical Society*, 298 Ill. App. 3d 356, 370 (1998). The State observes that this court has twice stated that respondents seeking discharge under section 9 of the SDPA are not entitled to the appointment of an independent psychiatric expert, first in *People v. Capoldi*, 37 Ill. 2d 11 (1967), then more recently in *People v. Trainor*, 196 Ill. 2d 318 (2001). The State notes that the appellate court in this case did not even cite *Capoldi* and did not analyze *Trainor*'s due process holdings.

In *Capoldi*, this court reviewed a trial court's order denying the defendant's motion for a hearing on his recovery petition. *Capoldi*, 37 Ill. 2d 11. This court held

that upon the filing of the defendant's application for recovery under section 9, the trial court should have held a hearing to determine if defendant had recovered. *Capoldi*, 37 Ill. 2d at 18. The *Capoldi* court also addressed the defendant's request for fees with which to hire an independent psychiatrist. *Capoldi*, 37 Ill. 2d at 18. This court rejected defendant's request for fees, holding that:

"There is no provision in the act entitling [defendant] to the services of an independent psychiatrist and we do not believe that such services are necessary to protect defendant's rights. There has been no showing that the psychiatrists employed by the Department of Mental Health and the Department of Public Safety will not give an honest and unprejudiced opinion of the defendant's mental condition, and in fact defendant alleges in his 1963 petition that he was interviewed by a member of the penitentiary's psychiatric division and found to be 'recovered from his mental condition.' " *Capoldi*, 37 Ill. 2d at 18-19.

Respondent claims that the State's reliance on *Capoldi* is misplaced. Respondent contends that the *Capoldi* court concluded that the defendant was not entitled to an independent psychiatric expert because a member of the penitentiary's psychiatric division found the defendant to be recovered. Here, in contrast, the psychologist and psychiatrist employed by the Department found that respondent had not recovered.

Respondent misapprehends the basis for this court's holding in *Capoldi*. This court denied the defendant's request for an independent psychiatrist in *Capoldi* because there is no provision in the SDPA entitling a defendant to the services of an independent psychiatrist and because we did not believe that such services were necessary to protect the defendant's rights. See *Capoldi*, 37 Ill. 2d at 18. Contrary to respondent's interpretation of the *Capoldi* holding, the fact that the State psychiatrist found the defendant to be recovered was not the basis for the court's holding. Rather, it was in support of the

holding denying an independent psychiatric exam that we noted that the defendant had not shown bias on the part of the State psychiatrists, and further noted that a psychiatrist employed by the State had in fact found the defendant to be recovered. See *Capoldi*, 37 Ill. 2d at 18-19. Under *Capoldi*, then, a respondent filing a recovery petition under section 9 of the SDPA is not entitled to an independent psychiatric expert unless he can show that the experts employed by the State will not give an honest and unprejudiced opinion of the respondent's mental condition.

Respondent additionally claims that the State's reliance on *Capoldi* is misplaced because *Capoldi* was decided before the United States Supreme Court's decision in *Ake v. Oklahoma*, 470 U.S. 68, 84 L. Ed. 2d 53, 105 S. Ct. 1087 (1985). In *Ake*, the Supreme Court held that when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires a state to provide access to a psychiatrist's assistance on the issue of defendant's sanity if defendant cannot otherwise afford a psychiatrist. *Ake*, 470 U.S. at 74, 84 L. Ed. 2d at 60, 105 S. Ct. at 1091-92. Respondent asserts that based upon *Ake*, a trial court in a recovery proceeding also must provide an indigent respondent with access to a psychiatrist's assistance.

We disagree. *Ake*'s holding applied to criminal trials. The instant proceedings are civil in nature. See 725 ILCS 205/3.01 (West 2000). Indeed, as the United States Supreme Court has stated, the fact that a respondent in a proceeding under the SDPA is provided "some of the safeguards applicable in criminal trials cannot itself turn these proceedings into criminal prosecutions requiring the full panoply of rights applicable there." *Allen v. Illinois*, 478 U.S. 364, 372, 92 L. Ed. 2d 296, 306, 106 S. Ct. 2988, 2993 (1986); see also *Goetz v. Crosson*, 967 F.2d

29, 33 (2d Cir. 1992) (court holds that *Ake* does not control issue of whether indigent individual is entitled to independent psychiatric assistance at commitment or retention hearing because constitutional protections granted criminal defendants are not automatically extended to civil commitment proceedings). Consequently, we find that *Ake*'s holding does not extend to proceedings under the SDPA.

As the State observes, this court recently reaffirmed that a respondent seeking discharge under section 9 of the SDPA is not entitled to the appointment of an independent psychiatric expert. See *Trainor*, 196 Ill. 2d 318. At issue in *Trainor* was whether the State could move for summary judgment on a respondent's application for recovery under section 9 of the SDPA. In addressing the issue, this court first addressed whether the State or the respondent bears the burden of proof in a recovery proceeding. *Trainor*, 196 Ill. 2d at 326. Decisions of the appellate court had placed the burden of proof on the respondent to show by a preponderance of the evidence that he had recovered. *Trainor*, 196 Ill. 2d at 334. This court clarified that under a plain reading of the SDPA, when a respondent files an application for recovery, the State must show at the recovery hearing that the respondent is still sexually dangerous. *Trainor*, 196 Ill. 2d at 335. The State's burden of proof is beyond a reasonable doubt. *Trainor*, 196 Ill. 2d at 335. This court further noted that section 5 of the SDPA, providing a respondent with the right to counsel and the right to demand a jury trial, also applies during a recovery proceeding. *Trainor*, 196 Ill. 2d at 335. Given that the State bears the burden of proof at the recovery proceeding and that a respondent has a right to counsel and to demand a jury trial, this court held that summary judgment was not appropriate in a recovery proceeding because summary judgment would relieve the State of its

burden of proof and would circumvent a respondent's right to a jury trial. *Trainor*, 196 Ill. 2d at 340-41.

In analyzing the procedure previously followed by the appellate court, this court stated:

"If the recovery hearing scheme created by the appellate court, which places the burden of proof on the defendant, was approved, a defendant would gain nothing in terms of an opportunity to regain his freedom. *Because, according to Illinois law, the trial court is not required to provide an independent psychiatrist to the defendant under the Act,* the defendant would have nothing but his own application to present to the trier of fact. *People v. McVeay*, 302 Ill. App. 3d 960, 964 (1999). The necessarily limited allegations made in the defendant's application alone would almost always be insufficient to sustain the burden placed on him to show by a preponderance of the evidence that he has recovered." (Emphasis added.) *Trainor*, 196 Ill. 2d at 339.

Moreover, in addressing the issue of summary judgment, this court again stated: "As we have previously noted, defendant is not entitled to appointment of an independent expert." *Trainor*, 196 Ill. 2d at 341.

Despite the preceding statements, respondent denies that *Trainor* reaffirmed that a respondent in a recovery proceeding is not entitled to an independent psychiatric expert. Respondent claims that because *Trainor* changed prior case law concerning the burden of proof in a recovery proceeding, so that the burden of proof in recovery proceedings is now the same as the burden of proof at the initial determination, it follows that because independent psychiatric evidence is required to initially commit a respondent, independent psychiatric evidence is required at the recovery stage.

We are not persuaded by respondent's analysis. Although the *Trainor* decision changed the burden of proof in a recovery proceeding to the same burden as at the initial commitment proceeding, it does not follow that a respondent is entitled to an independent psychiat-

ric expert at his recovery hearing. In fact, contrary to respondent's claim, a respondent is not entitled to his own independent psychiatric expert at the initial commitment proceedings under the SDPA. Rather, section 4 of the SDPA provides that:

"After the filing of the petition, the court shall appoint two qualified psychiatrists to make a personal examination of such alleged sexually dangerous person, to ascertain whether such person is sexually dangerous, and the psychiatrists shall file with the court a report in writing of the result of their examination, a copy of which shall be delivered to the respondent." 725 ILCS 205/4 (West 2000).

At the initial commitment proceeding, then, the respondent is examined by two psychiatrists appointed by the court. Nothing in section 4 of the SDPA provides that a trial court must allow a respondent to retain his own independent psychiatric expert. See 725 ILCS 205/4 (West 2000); see also *People v. McVeay*, 302 Ill. App. 3d 960, 964 (1999) (nothing in section 4 of the SDPA explicitly provides a respondent with the right to retain or have appointed his own expert to perform a psychiatric exam).

In any event, we need not speculate that *Trainor* intended to provide that an independent psychiatric exam is required in a recovery proceeding. Had this court intended to so provide, it certainly would have done so, particularly since the appellate court in *Trainor* specifically addressed the issue and held that a defendant in a recovery proceeding is not entitled to the appointment of an expert of his own choosing. See *People v. Trainor*, 312 Ill. App. 3d 860, 862 (2000). Instead of reversing the appellate court's ruling, *Trainor* twice quite clearly stated that a trial court is not required to provide an independent psychiatrist during recovery proceedings under the SDPA.

As the State observed, the appellate court in this case did not even cite *Capoldi* and did not address *Trainor*'s statements that a respondent in a recovery proceeding is

not entitled to an independent psychiatric exam. Rather, the appellate court held that the Supreme Court's decision in *Mathews v. Eldridge* requires a trial court to provide an indigent respondent in an SDPA recovery proceeding with an independent psychiatric expert. Although *Mathews* concerned the procedural safeguards required by the due process clause of the fifth amendment before a person may be deprived of property, the United States Supreme Court has since characterized the *Mathews* balancing test as setting forth a general approach for testing challenged state procedures against a due process claim in civil cases. *Medina v. California*, 505 U.S. 437, 444, 120 L. Ed. 2d 353, 362, 112 S. Ct. 2572, 2576 (1992). *Mathews* provides that three distinct factors must be considered to identify the specific dictates of due process: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedure requirement would entail. *Mathews*, 424 U.S. at 335, 47 L. Ed. 2d at 33, 96 S. Ct. at 903.

With regard to the first factor, "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425, 60 L. Ed. 2d 323, 330-31, 99 S. Ct. 1804, 1809 (1979). However, in analyzing the third factor, it also is clear that the State has a strong interest in treating sexually dangerous individuals and in protecting the community from the dangerous tendencies of those individuals. *Allen*, 478 U.S. at 373, 92 L. Ed. 2d at 307, 106 S. Ct. at 2994. Indeed, the purpose of the SDPA is to protect the public by sequestering the sexually dangerous person until he is recovered and to provide

treatment to the sexually dangerous person so that he may recover and be rehabilitated. *Trainor*, 196 Ill. 2d at 323-24. Moreover, allowing the appointment of independent psychiatric experts at the State's expense in recovery proceedings would impose significant fiscal and administrative burdens, because there is no limit on the number of applications for discharge that a respondent can file.

The second *Mathews* factor addresses the adequacy of the statutory procedures in light of the action taken. *People ex rel. Sheppard v. Money*, 124 Ill. 2d 265, 276 (1988). The appellate court found that there was a serious risk of an erroneous deprivation of a respondent's liberty interest through the procedures used because disallowing a request for an independent examination places a respondent at an extreme disadvantage. 337 Ill. App. 3d at 227. The appellate court held that unless a respondent is provided an independent psychiatric expert, he is virtually incapable of rebutting the State's evidence. 337 Ill. App. 3d at 227. The appellate court also stated that the "additional safeguard" of allowing a respondent to move for the appointment of an independent psychiatrist is inadequate because a respondent lacks the means with which to prove that the State's psychiatrists are biased or prejudiced, so that motions for an independent expert are often denied. 337 Ill. App. 3d at 228.

We disagree with the appellate court's analysis of the second factor under *Mathews*. The appellate court incorrectly assumed that the Department professionals at the institution where the applicant is confined will prepare a biased and prejudiced socio-psychiatric report. We decline to make such an assumption. We agree with the State that the Department professionals who treat sexually dangerous persons such as respondent are untainted by their employment given the nature of their professional

and fiduciary relationship with their patients. In addition, the Department professionals treating respondent are most knowledgeable about respondent's problems and progress toward recovery, and are in the best position to know if respondent has recovered. See *People v. Finkle*, 214 Ill. App. 3d 290, 295-96 (1991) (Department experts have "superior resources and expertise to deal with sexually dangerous persons. These experts, of course, are most knowledgeable about a defendant's problems and progress toward recovery"), *overruled on other grounds, People v. Trainor*, 196 Ill. 2d 318 (2001). Given the unique relationship between the Department professional and the respondent, we cannot say that there is a serious risk of an erroneous deprivation of a respondent's liberty interest if the respondent's motion for an independent psychiatric examination is denied. In fact, contrary to the appellate court's assumption that a Department expert will always testify against a respondent's discharge, we note that Dr. Carich had testified as an expert in sex offender treatment at least 80 times and had supported a respondent's application for discharge in 19 cases.

Respondent, however, points to two section 9 recovery proceedings in La Salle County in support of his argument that an independent psychiatric examination is required. Respondent states that in both cases, the juries allowed the conditional release of the respondents after the respondents were allowed to have an independent psychiatric exam.

We decline to attribute great weight to these two cases. We will not presume that an independent psychiatric expert will always testify contrary to the Department professionals or will always testify in favor of discharge. See, *e.g.*, *People v. Burk*, 289 Ill. App. 3d 270, 271-72 (1997) (Department psychiatrist and an independent psychiatrist both concluded that respondent remained

sexually dangerous). That two discharge applications were granted because independent psychiatric experts were appointed does not establish that a respondent has a due process right to such an expert.

Finally, we disagree with the appellate court's conclusion that unless a respondent is provided an independent psychiatric expert he is virtually incapable of rebutting the State's evidence. There are numerous safeguards in place to ensure the reliability of the recovery proceeding. As the appellate court conceded, a respondent can move for the appointment of an independent psychiatric expert if he believes that the Department experts are biased and prejudiced. A respondent has the right to counsel who can cross-examine the Department experts concerning any perceived bias and prejudice. A respondent also has the right to a jury trial on his recovery petition, as well as the right to proof beyond a reasonable doubt. See *People v. Allen*, 107 Ill. 2d 91, 102 (1985) (under *Mathews*, privilege against self-incrimination would add little reliability to sexually dangerous person proceedings because there are numerous safeguards ensuring reliability, including the right to a jury trial, the requirement of proof beyond a reasonable doubt and the right to confront witnesses), *aff'd*, 478 U.S. 364, 92 L. Ed. 2d 296, 106 S. Ct. 2988 (1986). The application of the *Mathews* balancing test, then, establishes that due process does not require the appointment of an independent psychiatric expert for a respondent in a section 9 discharge proceeding.

Respondent, however, offers an additional argument in support of his claim that indigent respondents must be provided access to an independent psychiatric examination in recovery proceedings. Respondent observes that in a recent decision, *People v. Masterson*, 207 Ill. 2d 305 (2003), this court engrafted the requirements of the Sexually Violent Persons Commitment Act (the SVPA)

(725 ILCS 207/1 *et seq.* (West 2000)) into the SDPA with regard to volitional requirements. Respondent further notes that the SVPA provides that if a person found to be sexually violent petitions the court for conditional release, "the person who has been committed may retain or, if he or she is indigent and so requests, the court may appoint a qualified expert or a professional person to examine him or her." 725 ILCS 207/55(a) (West 2000). Respondent therefore asks this court to follow *Masterson* and engraft the provisions of section 55(a) of the SVPA into the SDPA.

We find it unnecessary to engraft the provisions of section 55(a) of the SVPA into the SDPA. In *Masterson*, this court held that the SVPA's definition of the term "mental disorder" should be read into the SDPA. *Masterson*, 207 Ill. 2d at 329. The SDPA did not define the term "mental disorder" and, thus, did not specifically address an individual's volitional capacity or provide an explicit standard for gauging the probability or likelihood that the subject of the sexually dangerous person proceeding would commit sexual offenses in the future. *Masterson*, 207 Ill. 2d at 328-29. In contrast, the SVPA defined "mental disorder" to mean "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in the commission of sex offenses and results in serious difficulty controlling sexual behavior." *Masterson*, 207 Ill. 2d at 329. Because the term "mental disorder" in the SDPA was ambiguous, this court looked to the SVPA, a similar statute, to read defining language into the SDPA which had been omitted through legislative oversight. *Masterson*, 207 Ill. 2d at 329.

In contrast to the ambiguity concerning the term "mental disorder," the SDPA clearly sets forth the procedures that apply when a respondent files an application for discharge pursuant to section 9. Absent any

ambiguity in those procedures, there is no need to look to any similar statutes to aid in construing section 9. Moreover, the discharge procedures in the SDPA differ from those set forth in the SVPA because they are directed at different categories of offenders. The SDPA provides an alternative to criminal prosecution (see 725 ILCS 205/1.01 (West 2000)), while the SVPA provides for commitment in addition to criminal proceedings (see 725 ILCS 207/40(a) (West 2000)). Consequently, we see no need to incorporate the reexamination procedures set forth in the SVPA into the discharge procedures in the SDPA.

As a final matter, we address respondent's claim in his response brief that the trial court erred in denying his motion to exclude the testimony and socio-psychiatric report of Dr. Mark Carich because Dr. Carich is not a licensed psychologist. Respondent claims that section 9 requires that a licensed psychologist prepare the socio-psychiatric report. Respondent claims that because Dr. Carich is not a psychologist as defined by Illinois law, the socio-psychiatric report presented in his case was improperly prepared and improperly used as a basis for the denial of the recovery petition.

In response, the State observes that not only is Dr. Carich eminently qualified, but the appellate court has repeatedly rejected challenges to his qualifications. In addition, section 9 of the SDPA does not require that the socio-psychiatric report be prepared by a licensed psychologist, but instead merely requires that the report be prepared by a psychologist. Finally, the State points out that section 3(e) of the Clinical Psychologist Licensing Act exempts individuals employed by the state, such as Dr. Carich, from the licensing provisions of the Licensing Act. See 225 ILCS 15/3(e) (West 2000).

As the State observes, the appellate court on numerous occasions has rejected challenges to Dr. Carich's

qualifications in section 9 proceedings. In *People v. Sizemore*, 311 Ill. App. 3d 917 (2000), *overruled on other grounds, People v. Trainor*, 196 Ill. 2d 318 (2001), the appellate court rejected the respondent's claim that Dr. Carich's opinion should be viewed with skepticism because Dr. Carich did not have a professional license. The court stated:

> "Dr. Carich worked as a psychologist for DOC for 13 years and coordinated the sex-offender treatment programs at various facilities. We find that Dr. Carich was qualified to render an opinion that Sizemore was sexually dangerous and should not be conditionally released." *Sizemore*, 311 Ill. App. 3d at 928.

Subsequently, in *People v. Kastman*, the appellate court held that section 9 of the SDPA does not mandate that the psychologist preparing the socio-psychiatric report be licensed under the Licensing Act. *People v. Kastman*, 335 Ill. App. 3d 87, 95 (2002). The *Kastman* court further noted that section 3(e) of the Licensing Act "obviates the necessity of a license for an individual employed by a state agency to perform the duties of a psychologist." *Kastman*, 335 Ill. App. 3d at 96. Accord *People v. Trainor*, 337 Ill. App. 3d 788, 793 (2003) (holding that a psychologist who signs a socio-psychiatric report in a section 9 proceeding does not need to hold a professional license, and further finding that Dr. Carich's degrees and experience qualified him to render an opinion).

We agree with the appellate court on this issue. With regard to the socio-psychiatric report, section 9 of the SDPA provides:

> "The Director shall then cause to be prepared and sent to the court a socio-psychiatric report concerning the applicant. The report shall be prepared by the psychiatrist, sociologist, psychologist and warden of, or assigned to, the institution wherein such applicant is confined." 725 ILCS 205/9 (West 2000).

Nothing in this section mandates that the psychologist that prepares the report be licensed, and we decline to

read such a requirement into the statute. As the State observes, where a licensed psychologist is required, the General Assembly has clearly placed such a condition in the statute. See 405 ILCS 5/3—504(d) (West 2000) (evaluation by a "licensed clinical psychologist" can support emergency admission of minors to a mental health facility); 725 ILCS 5/102—21(a) (West 2000) (for purposes of the Code of Criminal Procedure of 1963, defining "clinical psychologist" to mean "a psychologist licensed under the Clinical Psychologist Licensing Act").

In addition, as the appellate court recognized, Dr. Carich is exempt from the licensing requirements under the Licensing Act. Section 3(e) of the Licensing Act provides:

"Nothing in this Act shall be construed to limit the services and use of official title on the part of a person, not licensed under the provisions of this Act, in the employ of a State *** insofar that such services are a part of the duties in his or her salaried position, and insofar that such services are performed solely on behalf of his or her employer." 225 ILCS 15/3(e) (West 2000).

Dr. Carich's services as a psychologist are part of the duties of his salaried position in the employ of the state and are performed solely on behalf of the state. Consequently, as the appellate court has found, Dr. Carich is exempt from the licensing requirements of the Licensing Act.

Finally, we agree with the appellate court that Dr. Carich is eminently qualified to render an opinion in a recovery proceeding. Dr. Carich has a B.S. in psychology, and an M.A. and Ph.D. in counseling. From 1989 to 1995, Dr. Carich served as a psychologist administrator for the sexually dangerous persons program at Menard Correctional Center. Since December 1995, Dr. Carich has served as Psychologist Administrator/Public Service Administrator at the Big Muddy River Correctional Center, where sexually dangerous persons are confined. Dr. Carich has held academic positions related to the

treatment of sexual offenders and has authored or coauthored at least 250 articles and manuscripts, as well as several books, on the subject of sex offender treatment and psychology. In fact, Dr. Carich is the principal designer of the state's sexually dangerous persons program. *Allison v. Snyder*, 332 F.3d 1076, 1078 (7th Cir. 2003). Given his education and experience, Dr. Carich clearly is qualified to submit socio-psychiatric reports and to testify in discharge proceedings under section 9 of the SDPA. The appellate court therefore properly affirmed the trial court's order denying respondent's motion to strike Dr. Carich's testimony and the socio-psychiatric report.

For all the foregoing reasons, we disagree with the appellate court's holding that the trial court violated respondent's right to due process in denying his request for an independent psychiatric examination. As we held in *Capoldi*, a respondent filing an application for discharge pursuant to section 9 of the SDPA is not entitled to an independent psychiatric examination unless he can show that the experts employed by the State are biased or prejudiced. We agree, however, with the appellate court's finding that Dr. Carich's testimony and report satisfied section 9 of the SDPA. The judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*