2024 IL App (1st) 221504-U

No. 1-22-1504

Order filed February 7, 2024

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 1756 |
| | ) | |
| MATTHEW LUGARDO, | ) | Honorable |
| | ) | Michael R. Clancy, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE VAN TINE delivered the judgment of the court.
Justices Lampkin and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's conviction over his contention that trial counsel violated his sixth amendment rights by conceding his guilt in closing argument.

¶ 2    A jury found defendant Matthew Lugardo guilty of five counts of predatory criminal sexual assault of a child under the age of 13 (720 ILCS 5/12-14.1(a)(1) (West 2010)) and four counts of criminal sexual assault of a family member under the age of 18 (720 ILCS 5/11-1.20(a)(3) (West 2010)) and the court sentenced him to 115 years in prison. On appeal, defendant contends that,

under *McCoy v. Louisiana*, 584 U.S. 414 (2018), trial counsel violated his sixth amendment rights by conceding defendant's guilt in closing argument. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Charged with 19 counts, defendant proceeded to trial on five counts of predatory criminal sexual assault of a child under the age of 13 (720 ILCS 5/12-14.1(a)(1) (West 2010)) and four counts of criminal sexual assault of a family member under the age of 18 (720 ILCS 5/11-1.20(a)(3) (West 2010)). The charges were premised on nine instances of defendant's finger, mouth, or penis contacting his daughter, O.T.'s, hand, mouth, vagina, or anus between May 2010 and June 2014, beginning when O.T. was nine years old. The State nol-prossed the remaining ten counts.[1]

¶ 5     The court initially appointed defendant an assistant Public Defender, but later granted defendant's request to proceed *pro se*. Sometime thereafter, and prior to trial, defendant retained private counsel and sent a letter requesting that counsel try to "win [the] case on a technicality." Defendant asked counsel for a copy of the bill of particulars, the verified complaint, and the probable cause hearing transcript. Defendant also asked counsel to file a motion to suppress inculpatory statements that defendant made to police, to "challenge the DNA," and to conduct background checks on his daughters, M.T. and O.T., and the detective who questioned defendant. Defendant directed counsel to "work toward dismissal" because there was "a good chance" that O.T. and M.T. would not testify, but also instructed counsel to impeach his daughters if they did testify.

---

[1]"Nol-prossed" refers to the State dismissing charges *nolle prosequi*, which is "a formal notice given by the State that a claim has been abandoned." *People v. Smith*, 2021 IL App (1st) 200984, ¶ 25.

¶ 6     At trial, M.T. and OT.'s testimony established that defendant repeatedly sexually assaulted them between May 2010 and June 2014. Emergency room nurses Lorraine Paglinazaro and Suzanne Schroeder testified that, after one instance of sexual assault on June 13, 2014, the date of defendant's arrest, they performed a sexual assault kit on O.T. and provided it to police. Forensic DNA analyst Brian Hapack testified that semen was present on O.T.'s vaginal swab from the sexual assault kit and that defendant "cannot be excluded as the source of the male DNA profile." The State introduced defendant's statements to Detective Castaneda and Assistant State's Attorney Joe Martinez, in which defendant admitted to sexually assaulting his daughters. The State also introduced a recording of a phone call defendant made from Cook County jail to a family member. In the phone call, defendant admitted to repeatedly sexually assaulting O.T.

¶ 7     After the State rested, the court informed defendant that it was his decision whether to testify. At defendant's request, the court continued the trial to the following day so defendant could confer with counsel about whether to testify. The following morning, defendant moved *pro se* for a mistrial, alleging that counsel committed "serious misconduct" by not presenting a defense and that, in the months prior to trial, counsel ignored defendant's objections to counsel's trial strategy. Defendant denied that he "waive[d] any type of defense" and insisted that he was "innocent." Counsel maintained that he repeatedly advised defendant of the shortcomings of the defenses that defendant wanted to present, and that defendant always consented to counsel's strategic decisions. The court denied defendant's *pro se* motion for a mistrial, explaining that defendant waited until the end of trial to raise counsel's allegedly deficient representation. The court also found that defendant was trying to create a mistrial via arguments that were "complete garbage." When the

court asked whether defendant would testify, he said that he would not. Defendant rested without presenting evidence.

¶ 8    Defense Counsel gave the following closing argument:

"Court, counsel, Mr. Lugardo, difficult cases require difficult decisions. Mr. Lagardo now faces nine specific charges. To compartmentalize those charges into one broad count on the charges, the charge, 1 — This is my numbering, not the way it was presented to the Court — Oral sex. The second one, penis to vagina. Third one, penis to mouth. Fourth one, penis to anus. Fifth one, finger to vagina. Sixth one, penis to vagina, but it's criminal sexual assault, not predatory. Age difference between before 13 and after. Penis to mouth as a sexual assault, not predatory. Penis in hand. And penis in vagina. Nine charges.

Mr. Lugardo and I — mostly me — want you to in fact look at each charge independently of the other, finding of particular fault. Guilt on one charge does not mean guilt on all.

Comments were made as to [O.T.] testifying she's hurt and she's damaged. You can use our common sense on that. We also have not the direct testimony of Mr. Lugardo, you have what he said — I think it was Assistant State's Attorney Martinez as well as Detective Castaneda, as well as his own statement to Mr. Otero. Those statements do not admit all of these acts — those statements state two things other than all of these acts. Judge Porter is going to shortly read instructions. The instructions are not necessarily complex, but they are instructions that need to be understood, read and discussed amongst all of you. Mr. Lugardo requests that you

look at those instructions carefully and act independently. The only comment on what the state's attorney said, one particular aspect, I don't believe there was any testimony of teeth. Your observations of that may be different than mine. Don't just base your decision on what the attorneys state, base your decision based upon what the evidence shows. Thank you."

¶ 9 The jury found defendant guilty on all counts. Defendant then fired counsel and the court appointed defendant an assistant Public Defender for posttrial proceedings.

¶ 10 Posttrial counsel moved for a new trial, alleging errors by the trial court and that trial counsel provided ineffective assistance. At the posttrial motion hearing, trial counsel testified that defendant provided no evidence upon which counsel could base a defense and never claimed that he was innocent. Counsel informed defendant of his trial strategy and defendant consented to all important strategic decisions. As to defendant's pretrial letter, counsel testified that he filed a motion to suppress defendant's inculpatory statements, as defendant requested, and explained to defendant why each of his other requests would be unnecessary or unhelpful to his case. Counsel also testified that defendant never mentioned any of the issues he raised for the first time in his *pro se* motion for a mistrial. Defendant did not testify at the posttrial motion hearing. The court denied defendant's posttrial motion and his subsequent motion to reconsider.

¶ 11 The court sentenced defendant to 115 years in prison. Defendant filed a motion to reconsider the sentence, which the court denied.

¶ 12 Defendant timely appealed.

¶ 13                                      II. ANALYSIS

¶ 14 On appeal, defendant argues that, under *McCoy v. Louisiana*, 584 U.S. 414 (2018), trial counsel violated defendant's sixth amendment right to autonomy by conceding his guilt in closing argument. Therefore, we begin by reciting the facts of *McCoy*.

¶ 15 McCoy was charged with first degree murder and his counsel concluded, based on the overwhelming evidence against McCoy, that conceding his guilt at trial might help avoid the death penalty. *Id.* at 418-19. McCoy disagreed and instructed counsel not to concede his guilt at trial. *Id.* at 419. Two days before trial, McCoy asked the court to replace counsel, but the court refused. *Id.* In opening, counsel stated that, after hearing the evidence, the jury would only be able to conclude that McCoy killed the victims. *Id.* McCoy objected but the trial court warned him to keep quiet and admonished that it would not permit "any other outbursts." *Id.* Counsel then told the jury that the "unambiguous" evidence proved McCoy "committed three murders." *Id.* at 419-20. During the presentation of evidence, McCoy testified that he was innocent and tried to assert an alibi. *Id.* at 420. In closing, counsel argued that McCoy "was the killer" and conceded the prosecution had met its burden of proof. *Id.* At sentencing, counsel again conceded that McCoy "committed these crimes." *Id.*

¶ 16 McCoy appealed, arguing that counsel's concession of his guilt over his objections violated his constitutional rights. *Id.* The United States Supreme Court held that "a defendant has the right to insist that counsel refrain from admitting guilt, even when *** [counsel concludes that doing so] offers the defendant the best chance to avoid the death penalty." *Id.* at 417. The Court explained that counsel's admission of guilt, and the trial court allowing counsel to admit defendant's guilt over his objection, were structural errors that violated McCoy's sixth amendment "protected

autonomy right *** to make the fundamental choices about his own defense." *Id.* at 426-28. The Court reversed McCoy's conviction and remanded for a new trial.

¶ 17    We now turn to defendant's sixth amendment claim in this case. The sixth amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel. U.S. Const., amends. VI, XIV. Counsel has authority to decide matters of trial strategy, such as deciding which "objections to make, the witnesses to call, and the arguments to advance." *McCoy*, 584 U.S. at 423. The defendant decides "whether to plead guilty, waive the right to a jury trial, testify in [his] own behalf, and forgo an appeal." *Id.* at 422.

¶ 18    Typically, we evaluate a sixth amendment claim of ineffective assistance of counsel under the two-pronged test of *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Albanese*, 104 Ill. 2d 504, 525-26 (1984). Under that standard, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that the defendant suffered prejudice due to counsel's deficient performance. *Strickland*, 466 U.S. at 687-88. However, in this case, defendant repeatedly insists that he does not claim that trial counsel provided ineffective assistance under *Strickland*. He asserts that his only claim on appeal is that counsel violated his sixth amendment "right to autonomy" under *McCoy* by conceding his guilt in closing argument.

¶ 19    The United States Supreme Court has held that the *Strickland* test for ineffective assistance does not apply to a claim that counsel violated a defendant's sixth amendment right to autonomy by conceding the defendant's guilt at trial. *McCoy*, 584 U.S. at 426-28. Rather, *McCoy* requires that we review such a claim for structural error.[2] *Id.* at 427. Structural error affects the fundamental

---

[2]Defendant claims the standard of review is *de novo*, citing *People v. Burns*, 209 Ill. 2d 551, 560 (2004). However, *Burns* concerns claims of due process violations under the fifth amendment. The State

constitutional framework of a criminal trial (*Weaver*, 582 U.S. at 295) and is "so intrinsically harmful as to require automatic reversal" (*Neder v. United States*, 527 U.S. 1, 7 (1999)). That is, structural error "necessarily renders a criminal trial fundamentally unfair or unreliable." *People v. Averett*, 237 Ill. 2d 1, 12-13 (2010). The United States Supreme Court has identified six types of structural error: (1) the complete denial of counsel, (2) not allowing a defendant to represent himself at trial, (3) a biased trial judge, (4) the denial of a public trial, (5) racial discrimination in grand jury selection, and (6) defective reasonable doubt jury instructions. *Neder*, 527 U.S. at 8 (collecting cases). Errors comparable to the six identified types of error are structural. See *People v. Jackson*, 2022 IL 127256, ¶¶ 29-30; *People v. Moon*, 2022 IL 125959, ¶¶ 29-30.

¶ 20    *McCoy* holds that it is a sixth amendment violation and reversible structural error when counsel concedes the defendant's guilt at trial, after the defendant expressly instructs counsel not to do so, and when the trial court overrules defendant's objection to counsel's concession of guilt at trial. *McCoy*, 584 U.S. at 417, 420.

¶ 21    However, that is not what happened in this case. Trial counsel did not concede defendant's guilt. Counsel argued that "[g]uilt on one charge does not mean guilt on all." That statement, which is accurate, did not admit that defendant sexually assaulted O.T. It did not discuss the evidence at all and it did not admit guilt on any charge. It did not identify which charge defendant *might* be guilty of and it did not concede that the State met its burden of proof. This was an entirely different argument than in *McCoy*, where counsel argued that "McCoy was the killer" and conceded the prosecution had met its burden of proof. See *id.* at 420. In the case at bar, counsel merely argued

_____

argues that the *Strickland* standard applies. As explained above, the *McCoy* Court expressly rejected that contention.

that *if* the jury found defendant guilty on *one* count, they should not automatically find him guilty of *all* counts. That was not a concession that defendant was, in fact, guilty of anything, it was simply an acknowledgement that the jury might find defendant guilty on one of the counts, while emphasizing that a finding of guilt on one count is irrelevant to considering the other counts.

¶ 22    Counsel then argues that defendant's inculpatory statements to police "do not admit all of these acts — those statements state two things other than all of these acts." We interpret "all of these acts" as referring to the "nine specific charges" of sexual assault against defendant. Counsel's argument that defendant's statements to police "state two things *other than* all of these acts." (emphasis added.) suggests that whatever defendant told police, he did not admit to the nine charges before the jury. Counsel's argument on this point did not come close to the argument in *McCoy*, in which counsel told the jury that the evidence established that McCoy "committed three murders." *Id.* at 419-20.

¶ 23    *McCoy* is further distinguishable. First, the record establishes that, unlike McCoy, defendant never told counsel, prior to trial, that his objective was to maintain his complete innocence. Rather, defendant's pretrial letter instructed counsel to try to win "on a technicality." Counsel's unrebutted testimony at the posttrial motion hearing established that defendant never claimed to be innocent and provided nothing that could support such a defense. Also, unlike McCoy, defendant did not testify that he was innocent. Rather, he chose not to testify at all. The record indicates that defendant first proclaimed his innocence during his *pro se* motion for a mistrial on the final day of trial after the State rested. By contrast, McCoy opposed the "assertion of his guilt at every opportunity, before and during trial, both in conference with his lawyer and in open court." *Id.* at 424.

¶ 24    Defendant argues that he insisted that counsel maintain his innocence because he rejected a plea deal and instructed counsel to make a speedy trial demand, impeach O.T. and M.T, and challenge DNA evidence. None of those actions are tantamount to McCoy's unequivocal and repeated statements of insistence that he did not kill the victims and that he had an alibi. A defendant may decide to reject a plea deal for any number of reasons that do not involve his actual innocence. See *Lee v. United States*, 582 U.S. 357, 367 (2017) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)) (plea decision-making does "not turn solely on the likelihood of conviction after trial"); see also *People v. Williams*, 188 Ill. 2d 365, 370 (1999) (guilty plea "waives several constitutional rights"). Defendant's other "instructions" to counsel were merely his suggestions on matters of trial strategy, which counsel had ultimate authority to decide. See *McCoy*, 584 U.S. at 422.

¶ 25    Moreover, in *McCoy,* the prosecution sought the death penalty. *Id.* at 417. The possibility of avoiding capital punishment explained *why* counsel would take the drastic step of conceding McCoy's guilt at trial, and that rationale factored into the Court's analysis. *Id.* By contrast, in this case, defendant did not face the death penalty, which was abolished in Illinois on July 1, 2011. See 725 ILCS 5/119-1 (eff. July 1, 2011). None of the factors that led to a finding of structural error in *McCoy* exists in this case. Accordingly, we hold that defendant has failed to establish a sixth amendment violation or structural error of the type that *McCoy* recognizes, and we affirm his convictions.

¶ 26                                    III. CONCLUSION

¶ 27    For the foregoing reasons, we affirm defendant's convictions.

¶ 28    Affirmed.