Docket No. 109649.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JAMES ALMORE, Appellee.

*Opinion filed March 24, 2011.*

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Freeman, Thomas, Garman, Karmeier, and Theis concurred in the judgment and opinion.

## OPINION

Defendant James Almore was found guilty of involuntary manslaughter in relation to the death of two-year-old Ethan Hamilton. Almore was later sentenced to an extended term of 12 years' imprisonment pursuant to section 9–3(f) of the Criminal Code of 1961 (Code) (720 ILCS 5/9–3(f) (West 2006)). The extended sentence was based on the Cook County circuit court's finding that defendant and the victim were "family or household members" as that term is defined in section 112A–3(3) of the Code of Criminal Procedure of 1963 (725 ILCS 5/112A–3(3) (West 2006)).

On appeal, the appellate court affirmed defendant's conviction, but vacated defendant's sentence. No. 1–08–1459 (unpublished order under Supreme Court Rule 23). The appellate court held that the evidence did not support the trial court's finding that defendant and the victim were "family or household members" within the meaning of the statute. The matter was remanded to the circuit court for resentencing.

We granted the State's petition for leave to appeal. The single issue before us is whether the evidence supports the trial court's finding that defendant and the victim "shared a common dwelling" within the meaning of section 112A–3(3) and, thus, were "family or household members," justifying an extended sentence.

For reasons that follow, we reverse the judgment of the appellate court.

## BACKGROUND

On the morning of August 23, 2006, Lovia Hampton went to work and left her two-year-old son, Ethan, in the care of her boyfriend, defendant James Almore. Defendant had been Lovia's boyfriend since November 2004 and on August 23, 2006, Lovia and Ethan had been staying with defendant at his temporary residence at 1228 West 99th Street in Chicago for the previous five days.

Neither Lovia nor defendant had a residence of their own. Lovia and Ethan ordinarily lived with Lovia's mother, siblings, and other extended family in the Hampton family home at 56 West 114th Place in Chicago. Defendant had stayed with Lovia and Ethan in the Hampton home on several occasions. Defendant's temporary residence was the upstairs apartment in the home of his aunt, Ruby Watkins, at 1228 West 99th Street in Chicago. There, defendant lived with his two cousins, Charles Watkins and Howard Terrell Williams. Watkins and Williams had their own bedrooms, but defendant slept on an air mattress in the living room of the upstairs apartment.

When Lovia left for work around 7 a.m. that August morning, Ethan was still sleeping. According to defendant, Ethan woke up around 10 a.m. and they played "wrestling" and "boxing" games together. Defendant then left Ethan on the air mattress with a juice box and some powdered doughnuts while defendant went into another room to use a computer. Later, defendant allegedly heard Ethan coughing and returned to the living room. There he found Ethan lying lifelessly on the floor near the air mattress. Defendant also noticed that Ethan had "spit up" on the air mattress.

Believing that Ethan had choked on a doughnut, defendant yelled for his cousin, Williams, and they each attempted the Heimlich maneuver on Ethan. Defendant also called 911 and was given instructions on how to perform cardio-pulmonary resuscitation (CPR).

-2-

Defendant and Williams both attempted to perform CPR on Ethan until paramedics arrived.

The 911 call was received just before 11 a.m. on August 23, 2006. Within a few minutes of the call, paramedics arrived at defendant's residence. They continued to perform CPR on Ethan as they transported him to the hospital. At the hospital, advanced lifesaving measures were taken. Nonetheless, Ethan could not be revived. He was pronounced dead soon after his arrival at the hospital. An autopsy was performed and the medical examiner ruled Ethan's death a homicide. The autopsy report indicated that Ethan was covered in fresh bruises consistent with abuse and that he had internal injuries which suggested that Ethan had been held against a wall or floor while being punched or kicked. Based on the autopsy report, defendant was charged with first degree murder. In a bench trial, defendant was tried on that charge and convicted.

Ten days after the court found defendant guilty of murder, the court heard argument on defendant's posttrial motion for new trial. Based on defense counsel's argument, the trial court vacated defendant's murder conviction and, instead, found defendant guilty of involuntary manslaughter. Immediately thereafter, the court proceeded to sentencing. After hearing argument, the court imposed an extended-term sentence of 12 years' imprisonment based on its finding that the victim and defendant were "household or family members." See 720 ILCS 5/9–3(f) (West 2006).

Defendant appealed. The appellate court affirmed defendant's involuntary manslaughter conviction, but vacated the extended sentence. The court held that, in order for defendant and Ethan to be "family or household members," the evidence had to show they "shared a common dwelling" within the meaning of section 112A–3(3). Relying on *People v. Young*, 362 Ill. App. 3d 843 (2005), the court interpreted "shared a common dwelling" to mean that the persons in question must have stayed together "on an extended, indefinite, or regular basis." The court then held the evidence did not show that the victim and defendant "shared a common dwelling" because there was no evidence presented at trial indicating that defendant, the victim, and Hampton stayed together on an extended or regular basis. As a result, the court held the evidence did not support the trial court's finding that defendant and Ethan were

household members within the meaning of section 9–3(f) and, thus, the trial court erred when it imposed an extended Class 2 felony sentence. The appellate court vacated defendant's sentence and remanded the matter to the trial court for resentencing.

We granted the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

ANALYSIS

In the case at bar, defendant was convicted of involuntary manslaughter. 720 ILCS 5/9–3(a) (West 2006). Ordinarily, involuntary manslaughter is a Class 3 felony (720 ILCS 5/9–3(d) (West 2006)), for which a person may be sentenced to a term of two to five years' imprisonment. See 730 ILCS 5/5-4.5-40 (West 2008). However, the involuntary manslaughter statute provides for an extended sentence in paragraph (f), which states:

> "In cases involving involuntary manslaughter in which the victim was a family or household member as defined in paragraph (3) of Section 112A–3 of the Code of Criminal Procedure of 1963 [725 ILCS 5/112A–3], the penalty shall be a Class 2 felony, for which a person if sentenced to a term of imprisonment, shall be sentenced to a term of not less than 3 years and not more than 14 years." 720 ILCS 5/9–3(f) (West 2006).

In turn, paragraph (3) of section 112A–3 provides:

> " 'Family or household members' include spouses, former spouses, parents, children, stepchildren and other persons related by blood or by present or prior marriage, persons who share or formerly shared a common dwelling, persons who have or allegedly have a child in common, persons who share or allegedly share a blood relationship through a child, persons who have or have had a dating or engagement relationship, persons with disabilities and their personal assistants, and caregivers as defined in paragraph (3) of subsection (b) of Section 12–21 of the Criminal Code of 1961 [720 ILCS 5/12–21]. For purposes of this paragraph, neither a casual acquaintanceship nor ordinary fraternization between 2 individuals in business or social contexts shall be deemed to constitute a dating relationship." 725 ILCS

5/112A–3(3) (West 2006).

In the case at bar, it is undisputed that defendant was never married to Ethan's mother and that Ethan was not related to defendant by blood. Thus, the only statutory basis for imposing an extended Class 2 felony sentence is if Ethan and defendant "share[d] or formerly shared a common dwelling." The issue before us, therefore, is whether the evidence supports the trial court's finding that Ethan and defendant shared a common dwelling.

### Standard of Review

The State contends that the appellate court erred when it vacated the defendant's extended Class 2 felony sentence because the evidence, viewed in the light most favorable to the prosecution, is sufficient to support the trial court's finding that the victim and defendant shared a common dwelling and, thus, were "household members." See *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009) (when considering issues concerning the sufficiency of the evidence, the standard is whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime beyond a reasonable doubt). The defendant agrees that this is the proper standard, but argues that the appellate court properly found that the trial court erred because a rational trier of fact could not have concluded from the evidence presented that defendant and Ethan were household members beyond a reasonable doubt.

The State also recognizes, however, that the proper construction of the term "shared a common dwelling" in the statutory definition of "family or household member" is also at issue in this case and whether statutory terms have been construed correctly is a question of law, which is reviewed *de novo*. *People v. Howard*, 228 Ill. 2d 428, 432 (2008).

### "Share a Common Dwelling"

Section 112A–3(3) provides that persons will be deemed "family or household members" if they "share or formerly shared a common dwelling." In determining what it means to "share a common dwelling," the appellate court below relied on *People v. Young*, 362

Ill. App. 3d 843, 849 (2005), wherein the court interpreted the phrase "family or household member" in connection with the domestic battery statute, which also references section 112A–3 of the Code of Criminal Procedure.

In *Young*, the State contended that the defendant was guilty of domestic battery because the defendant and the victim were "family or household members" by virtue of the fact that they "shared a common dwelling" within the meaning of section 112A–3(3). At trial, evidence was presented which showed that the night before the alleged attack, the defendant and the victim had spent the night in the same "PADS" homeless shelter. The next morning, the defendant and victim left the shelter together and then spent the day together, drinking in a bar. Later that day, when they went to check in at another PADS shelter for the evening, they got into an argument. In the parking lot outside the shelter, the defendant attacked the victim.

At trial, the victim testified that she met the defendant at a PADS shelter about 1½ months prior to the attack and that she and the defendant had stayed at various PADS shelters on several occasions since then. The victim denied, however, that she and the defendant were more than social friends, stating that they had been on only one "date" and did not have an ongoing dating relationship.

Based on the evidence, the trial court found that the defendant and victim shared a common dwelling and convicted the defendant of domestic battery. The appellate court reversed, however, finding that the evidence did not support a finding that the couple had shared a common dwelling. The appellate court held that "shared lodgings are not a shared dwelling unless the living arrangement has a degree of permanence" and a "dwelling" is where persons stay "on an extended, indefinite, or regular basis."

Based on the reasoning in *Young*, the appellate court in the case at bar concluded that Ethan and defendant did not share a common dwelling. The appellate court noted that the *Young* court "recognized the possibility that two people could form a household for the purposes of section 112A–3(3) 'by virtue of their consistently lodging together,' thus creating a nomadic household with no fixed place of residence." Nevertheless, the court found no shared "common dwelling" in the case at bar because "there was no testimony at trial indicating the defendant, the victim, and Hampton stayed together in

one adult's home on an extended or regular basis."

While we agree with the appellate court that the statute does not require a single fixed residence, we do not agree that the evidence in this case does not support a finding that defendant and Ethan shared a common dwelling within the meaning of section 112A–3(3). As recognized in *In re Alexis H*., 401 Ill. App. 3d 543, 559-60 (2010), a statute must be interpreted consistent with the purpose and intent of the legislature. When looking at the language used by the legislature to define "family or household member" in paragraph (3) of section 112A–3, it is clear that the legislature attempted to capture all of the myriad types of "familial" relationships, both past and present, as well as various situations of cohabitation and shared living arrangements. The statutory definition is broad. There can be no bright-line test for determining household membership. Each case must be decided based on its specific facts.

Although the statute does not indicate the length of time or the frequency with which persons must share lodgings to constitute having "shared a common dwelling," the amount of time the parties have resided together is one factor that may be considered. No particular length of time is required, nor is length of time the dispositive factor. Other factors that may be considered are: the nature of the living arrangements, whether the parties had any other living accommodations; whether they kept personal items at the shared residence; and whether the parties shared in the privileges and duties of a common residence, such as contributing to household expenses or helping with maintenance. See *In re Alexis H.*, 401 Ill. App. 3d 543 (2010); *Glater v. Fabianich*, 252 Ill. App. 3d 372 (1993).

We agree that the statute is not so broad that it includes situations, as in *Young*, where the defendant and victim had no real connection other than that they slept under the same roof on a few occasions. But that is not the case here.

In the case at bar, the evidence showed that for five consecutive days prior to Ethan's death, Ethan and his mother stayed with defendant at defendant's temporary residence on 99th Street. During that time, Ethan and Lovia slept in the same room with defendant and even shared the same air mattress. Some of Ethan's clothes, food, and medicine were kept at defendant's residence and Lovia relied on defendant to provide child care for Ethan when she left to go to work.

In addition, the evidence established that Lovia and defendant dated for 1½ years, which was most of Ethan's life. Lovia testified that, on several occasions during that 1½ years, she and defendant resided together either at her family residence or at defendant's residence. Whenever Lovia stayed at defendant's residence, Ethan stayed there too. Thus, the five days prior to Ethan's death was not the only time that Lovia, Ethan and defendant shared a common dwelling, nor was it the first time that Lovia and Ethan stayed at defendant's residence. Also, Lovia testified that August 23, 2006, was not the only time she left Ethan in defendant's care.

We hold this evidence is sufficient to support a finding that Lovia, Ethan, and defendant were members of each other's "household" by virtue of the fact that they shared a common dwelling, even though the "dwelling" was sometimes the Hampton family home and sometimes the residence defendant shared with his relatives.

## CONCLUSION

Based on the totality of the circumstances, we conclude the evidence supports the trial court's finding that defendant and Ethan shared a common dwelling within the meaning of section 112A–3(3). Accordingly, we reverse the appellate court judgment and reinstate defendant's 12-year extended sentence.

Appellate court judgment reversed;
circuit court judgment affirmed.