# Illinois Official Reports

## Supreme Court

***People v. Grant*, 2016 IL 119162**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JAMES E. GRANT, Appellee. |
| Docket No. | 119162 |
| Filed | May 19, 2016 |
| Decision Under Review | Appeal from the Appellate Court for the Fifth District; heard in that court on appeal from the Circuit Court of Johnson County; the Hon. James R. Williamson, Judge, presiding. |
| Judgment | Affirmed. <br> Cause remanded with directions. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Tambra K. Cain, State's Attorney, of Vienna (Carolyn E. Shapiro, Solicitor General, and Michael M. Glick and Katherine M. Doersch, Assistant Attorneys General, of Chicago, and Patrick Delfino, David J. Robinson and Perry Miller, of State's Attorneys Appellate Prosecutor's Office, of Springfield, of counsel), for the People. <br><br> Cord Z. Wittig, of Kruger, Henry & Hunter, of Metropolis, for appellee. |

Justices

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Kilbride, Karmeier, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1    At issue is whether, in a recovery proceeding under the Sexually Dangerous Persons Act (SDPA) (725 ILCS 205/0.01 *et seq.* (West 2012)), the State is entitled to have an independent psychiatric expert evaluate the respondent and testify at trial. In this recovery proceeding, the Johnson County circuit court appointed a psychiatric expert at the State's request. The expert testified at trial that respondent, James E. Grant, had not recovered and was substantially likely to commit future sex offenses. A jury found that respondent was still a sexually dangerous person. The appellate court reversed and remanded for a new trial, holding that the SDPA does not contemplate the appointment of an independent psychiatric expert for the State in a recovery proceeding. 2015 IL App (5th) 130416. We allowed the State's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Jan. 1, 2015)) and now affirm the judgment of the appellate court.

¶ 2                                    BACKGROUND

¶ 3    Respondent was originally committed to the custody of the Department of Corrections (the DOC) as a sexually dangerous person in April 2002. In 1999, respondent had been charged with home invasion, residential burglary, attempted aggravated criminal sexual assault, and aggravated battery. The charges arose out of his attempted sexual assault of an adult neighbor. Respondent pleaded guilty to home invasion and was sentenced to 20 years' imprisonment. That same year, respondent was also charged in three separate cases with residential burglary, theft, and criminal damage to property. In each of these cases, respondent broke into homes and stole women's underwear. In two of the three cases, respondent pleaded guilty and was sentenced to nine years' imprisonment. In the third case, the State elected to seek respondent's commitment under the SDPA in lieu of prosecution. The court appointed two psychiatrists to examine respondent. He stipulated to the contents of their reports and admitted the allegations in the petition. The court found him to be a sexually dangerous person and remanded him to the custody of the DOC.

¶ 4    In 2004 and 2009, respondent filed applications for recovery. The first application was voluntarily dismissed by respondent. The second application resulted in a bench trial at which the court found that respondent had not recovered and that he remained a sexually dangerous person.

¶ 5    In May 2012, respondent filed the application for recovery that is the subject of the current proceeding. With his application, respondent filed a motion for the court to appoint an independent psychiatrist to examine him. Respondent alleged that he could not receive a fair and impartial hearing on his recovery application unless he was examined by a psychiatrist not employed by the DOC. The trial court directed the DOC to prepare a socio-psychiatric report in accordance with section 9 of the SDPA. The court denied respondent's motion for an

independent examination. When summarily denying that motion, the court explained, "He gets the State psychiatrist, psychologist, etc., hired by the State of Illinois."

¶ 6 On November 26, 2012, the DOC filed the sexually dangerous persons evaluation. The report was prepared by Nageswararao Vallabhaneni, a psychiatrist; Kristopher Clounch, a psychologist; and Dale Spitler, a licensed clinical social worker. The report explained that, in a recent evaluation that scored treatment progress from January to June 2012, respondent was evaluated in 23 areas and did not score "meets expectations" in any area. Respondent rated "minimal need for improvement" in attendance and completion of task assignments. He scored "needs some improvement" in decreasing criminal behavior and exploitation. In 12 other areas, he scored "considerable need for improvement," and in 3 areas he scored "unsatisfactory." Those three areas were identification of cycle behavior, recognizing when he is in a deviant cycle, and the use of relapse prevention skills to stop his cycle. The report explained that these three areas are "primary goals in a relapse prevention program and are considered crucial in preventing future offending." The report also explained that respondent had "failed to engage in treatment due to his constant denial of facts." The report further stated that respondent has participated in treatment only intermittently and that the treatment providers have reported that respondent has not made sufficient progress in treatment.

¶ 7 However, the report also explained that respondent's score on the Static-99R showed that he was a low risk to offend. The Static-99R is an instrument designed to assist in the evaluation of sexual offense recidivism for sexual offenders. It measures the number of static risk factors present in any one individual. These risk factors have been shown to correlate with sexual offense recidivism. A score on the Static-99R can range from -3 to 12. Respondent scored a one. Offenders in this group reoffend at a rate of 9.4% and 15.7% in 5 and 10 years, respectively.

¶ 8 The report also listed three dynamic risk factors that respondent possessed. These risk factors increased the risk that he would reoffend. The first was "Offense-supportive attitudes." According to the report, beliefs that justify or excuse sexual offending are associated with an increase in sexual recidivism. The report explained that respondent had distorted beliefs about the actions of women. An example was respondent believing that a victim was asking him to come over when she walked by his house in a bikini. The second dynamic risk factor was "poor cognitive problem-solving." Respondent appeared to understand that his past behaviors were inappropriate, but he was unable to provide specific techniques or methods that he could use to avoid such problematic behaviors in the future. The final dynamic risk factor was "resistance to rules and supervision." The report explained that respondent's participation in treatment was poor and that he had been cited for 13 rule violations related to treatment since February 2010. Eleven of the thirteen were for missing some treatment activity. Respondent was twice suspended from treatment because of his rule violations.

¶ 9 A case-specific factor listed in the report was respondent's mental illness. The report explained that respondent suffered brain trauma during birth and then again when his car was hit by a train when he was in his early twenties. As a result of these injuries, respondent has significant cognitive, learning, and problem-solving difficulties.

¶ 10 Despite the evaluators' concerns about respondent's failure to progress in treatment, they did not believe that his continued confinement as a sexually dangerous person was necessary. The report stated:

"Although Mr. Grant has neither fully participated nor displayed significant improvement in treatment, he is not at significant risk to sexually reoffend in the future for two reasons. First, he does not suffer from a mental disorder such as pedophilia which would predispose him toward future sexual violence. Second, his score on the Static-99R indicates that he is at a low risk for sexual offense recidivism.

In conclusion, it is the opinion of these evaluators, to a reasonable degree of psychological certainty, that further confinement of James Grant in an institutional setting is no longer warranted. Therefore, it is recommended that Mr. Grant be released from BMRCC to Conditional Release including supervision and sex offender specific treatment."

¶ 11 The State then moved for the court to appoint an independent psychiatrist to examine respondent. In the motion, the State explained that it objected to and contested some of the findings in the evaluation and that therefore it would like to retain Dr. Angeline Stanislaus to perform a psychiatric evaluation of respondent. Respondent filed an objection to the motion. Respondent argued that there was no provision in the SDPA for appointment of an independent psychiatrist for the State in a recovery proceeding. Respondent pointed out that in *People v. Burns*, 209 Ill. 2d 551 (2004), this court had held that a respondent in a recovery proceeding was entitled to appointment of an independent psychiatrist only if he could show that the experts employed by the State would not give an honest and unprejudiced opinion of the respondent's mental condition. Respondent argued that the State should be held to this same standard and pointed out that the State had not alleged bias on the part of the evaluators but had simply stated that it objected to portions of the report. Respondent also argued that the idea of an "independent psychiatrist for the State" is "superfluous and redundant" because the three evaluators who prepared the report are already State agents or contractors. In the alternative, respondent asked that, if the court granted the State's motion, then it should also appoint an independent psychiatrist for respondent.

¶ 12 At the hearing on the State's motion, respondent argued that, as he had cooperated with the State's examiners, there was no basis to appoint an independent psychiatrist for the State. The State objected to respondent referring to the evaluators who prepared the report as the "State's examiners." The State explained that those experts were chosen by the DOC. The State argued that nothing in the statute limited its right to call an independent expert. The trial court responded that the evaluators in this case were chosen by the DOC and were being paid by the State of Illinois. The State acknowledged that some previous cases had referred to evaluators chosen by the DOC as the State's experts but said that was no longer accurate because the DOC now contracts the work out rather than using individuals who were directly involved in an offender's treatment. The State argued that, because it has the burden of proof in a recovery proceeding and is entrusted with protecting the public, it needed to have the right to call an independent expert. The State contended that its hands would be unfairly tied if it had to rely on whatever experts were chosen by the DOC.

¶ 13 Respondent countered that it would be unfair to appoint an independent expert for the State simply because the State disagreed with portions of the report. Respondent noted that this court in *Burns* held that a respondent could not get an independent expert appointed simply because he disagreed with a portion of the report and instead would have to establish bias on the part of the examiner. The State responded that a respondent could always hire an independent expert

at his own expense even if he did not qualify for a court-appointed one. The State then explained that this situation is different because it has the money to pay for an independent expert and that respondent could not dictate how the State's Attorney's office chose to expend its funds.

¶ 14     After hearing the parties' arguments, the court granted the State's motion and appointed Dr. Stanislaus to examine respondent. Respondent again asked the court to appoint an independent expert for him if it was appointing one for the State. The State objected and said that respondent was asking for the State to pay for his expert and respondent was not entitled to do this unless he could show bias or prejudice on the part of the people who prepared the socio-psychiatric report. The court agreed with the State that respondent had not even alleged bias or prejudice on the part of the evaluators. Respondent explained that he was basing his argument on fundamental fairness because the court had appointed an expert for the State without requiring the State to establish bias or prejudice. The court denied respondent's request.

¶ 15     At respondent's jury trial, Dr. Stanislaus testified that she believed that it was substantially probable that respondent would commit sex offenses and acts of sexual violence if he was not confined. She did not believe that respondent had recovered, and she did not believe that respondent could be safely managed in the community. Dr. Stanislaus believed that respondent's risk of reoffending was much higher than what was reflected in the Static-99R because of the dynamic risk factors that were present. Dr. Stanislaus testified that, among the things that increased respondent's risk of reoffending were that: (1) his offenses began to escalate after age 40; (2) he did not believe that he was a sex offender or that he had done anything wrong; (3) he had been in treatment for 10 years without making progress, and he believed that treatment was for the benefit of others rather than himself; and (4) he was still not discussing what his real sexual arousal is and how he is managing it.

¶ 16     When asked whether respondent had a mental disorder, Dr. Stanislaus testified that she diagnosed respondent with the mental disorders transvestite fetishism and paraphilia not otherwise specified. Dr. Stanislaus explained that someone who suffers from transvestite fetishism will typically steal objects such as undergarments of the opposite sex and use them for cross-dressing or masturbation. She explained that respondent meets the criteria for this diagnosis because he had stolen women's undergarments and obtained sexual arousal by smelling them, wearing them, or holding them. Respondent had suffered from this disorder since at least 1997, but Dr. Stanislaus believed that, based on respondent's self-reporting, the problem may have existed for much longer than that. Dr. Stanislaus testified that paraphilia is a deviant sexual disorder. The paraphilia diagnosis was based on respondent's attempted sexual assault of his neighbor, an act which he had fantasized about for six months. Here, Dr. Stanislaus designated the type of paraphilia as "not otherwise specified" because she did not have all of the requirements to diagnose the particular element.

¶ 17     The jury found that respondent had not recovered and remained a sexually dangerous person. Respondent appealed, arguing, *inter alia*, that the trial court had erred in appointing an independent psychiatric expert for the State without requiring the State to show that the evaluators hired by the DOC were biased. The appellate court agreed with respondent, reversed the circuit court, and remanded for a new trial. The appellate court held that nothing in the SDPA granted the State the right to appointment of an independent expert in a recovery

proceeding. The court explained that, in a recovery proceeding, the SDPA "contemplates reliance on impartial experts rather than a battle of experts retained by the parties." 2015 IL App (5th) 130416, ¶ 21. The court held that there may be circumstances under which the State could object to the report prepared by the DOC evaluators, but the State could not do so simply because it disagreed with the report's conclusions. *Id.* ¶ 22. The court noted that a respondent is entitled to a court-appointed expert only if he can demonstrate bias on the part of the DOC evaluators, and the trial court did not hold the State to this same standard. *Id.* ¶ 23. The court concluded that the trial court compounded its error when it failed to appoint an independent expert for respondent after appointing one for the State. *Id.* ¶ 25. The court explained that the presumption of impartiality would not apply to an expert handpicked by the State, and if the court was going to appoint an expert chosen by the State, due process would require the court to appoint an independent expert for respondent. *Id.* ¶¶ 27- 28. Because the court reversed on these bases, it declined to address the other arguments raised by respondent. *Id.* ¶ 11.

¶ 18                                                    ANALYSIS

¶ 19        The State argues that the appellate court erred in holding that the court may not appoint an independent expert for the State in a recovery proceeding. According to the State, what really happened in this case is that the State simply retained its own expert witness, and there is nothing in section 9 prohibiting the State from retaining an expert. The State further argues that due process did not require the trial court to appoint an expert for respondent when it appointed one for the State. Finally, and in the alternative, the State argues that, if it were required to show bias on the part of the evaluators, it met that showing here.

¶ 20        The State's first argument requires us to construe section 9 of the SDPA. When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent, keeping in mind that the best and most reliable indicator of that intent is the statutory language itself, given its plain and ordinary meaning. *People v. Howard*, 233 Ill. 2d 213, 218 (2009). To discern the plain meaning of statutory terms, it is appropriate for the reviewing court to consider the statute in its entirety, the subject it addresses, and the apparent intent of the legislature in enacting it. *Id.* Unless the language of the statute is ambiguous, this court should not resort to further aids of statutory construction and must apply the language as written. *People v. Glisson*, 202 Ill. 2d 499, 504-05 (2002). Additionally, although proceedings under the SDPA are civil in nature, the possibility of indefinite confinement for a sexually dangerous person means that the SDPA must be given the same strict construction as penal statutes. *People v. Bruckman*, 33 Ill. 2d 150, 153-54 (1965). Our review is *de novo*. *People v. Almore*, 241 Ill. 2d 387, 394 (2011).

¶ 21        Before addressing the State's argument, we briefly set forth the different procedures for an initial commitment proceeding and a recovery proceeding. In an initial commitment proceeding, the court appoints two "qualified psychiatrists" to evaluate the respondent, determine whether he is a sexually dangerous person, and prepare for the court a written report of their findings. 725 ILCS 205/4 (West 2012). The respondent has a right to demand a jury trial and be represented by counsel. At the hearing on the petition, the State is allowed to introduce evidence of crimes the respondent has committed and whatever punishments were inflicted. 725 ILCS 205/5 (West 2012). The State has the burden of proving beyond a

- 6 -

reasonable doubt that the respondent is a sexually dangerous person in need of confinement. 725 ILCS 205/3.01 (West 2012).

¶ 22    By contrast, when a respondent files an application for recovery, section 9(a) provides that the court will direct the Director of the Department of Corrections to cause to be prepared a socio-psychiatric report about the applicant. At the time of the proceedings in this case, the statute provided that this report was to be prepared by a "social worker and psychologist under the supervision of a licensed psychiatrist assigned to the institution wherein [the] applicant is confined." 725 ILCS 205/9(a) (West 2012). The court will then set a hearing at which the report prepared under the direction of the Director of the DOC is considered, along with any other "relevant information submitted by or on behalf of [the] applicant." *Id.* Either the State or the respondent may request that the hearing be held before a jury, and the State bears the burden of proving by clear and convincing evidence that the respondent is still a sexually dangerous person. 725 ILCS 205/9(b) (West 2012). If the respondent refuses to cooperate with the State's examiner, he may not introduce evidence of any other psychiatric examinations of himself but may introduce expert testimony based only upon a review of his records. 725 ILCS 205/9(c) (West 2012).

¶ 23    The State contends that, although its motion was styled "Motion for Appointment of Independent Psychiatrist to Examine Defendant" and it specifically asked the court to appoint Dr. Stanislaus for the State, what it was really doing was simply retaining its own expert witness. Indeed, in the motion for the appointment of the expert, the State explained that it desired to "retain an independent expert to examine the Defendant." According to the State, it makes sense to speak of "appointment" of an expert only when an indigent respondent seeks the assistance of an expert at the State's expense. By contrast, as far as the State itself is concerned, there is no difference between "retaining" an expert and seeking "appointment" of an expert, because either way the State is paying for it. The State contends that the SDPA allows either party to *retain* its own independent expert without having to show bias on the part of the DOC evaluators. According to the State, respondents are granted that right explicitly by section 9(a), which provides that, at a hearing on an application for recovery, the trial court "shall consider the report so prepared under the direction of the Director of the Department of Corrections and any other *relevant information submitted by or on behalf of [the] applicant*." (Emphasis added.) 725 ILCS 205/9(a) (West 2012). The State asserts that it is implicitly granted the right to retain an expert by section 9(c) of the SDPA, which provides, in relevant part, as follows:

> "(c) If the applicant refuses to speak to, communicate with, or otherwise fails to cooperate with *the State's examiner*, the applicant may only introduce evidence and testimony from any expert or professional person who is retained to conduct an examination based upon review of the records and may not introduce evidence resulting from an examination of the person." (Emphasis added.) 725 ILCS 205/9(c) (West 2012).

The appellate court assumed, without discussion, that the statutory reference to the "State's examiner" was to the DOC evaluators listed in section 9(a). See 2015 IL App (5th) 130416, ¶ 15. The State contends that this cannot be correct because section 9(a) does not use the phrase "State's examiner," and it is presumed that when the legislature uses different language in different parts of a statute, it is presumed that a different meaning is intended. See *Illinois State*

*Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 28. The State further contends that the DOC evaluators cannot properly be called the State's examiners because the State does not become involved in the recovery proceeding until after the DOC evaluation is filed. Additionally, at oral argument, the State pointed out that "State's examiner" is single, and there are three examiners mentioned in section 9(a).[1]

¶ 24 We disagree with the State's position that when the statute refers to a respondent refusing to cooperate with "the State's examiner," it is referring to an independent expert hired by the State. While, admittedly, the statute could be clearer, we believe that when section 9(c) references "the State's examiner," it is referring to a respondent's refusal to cooperate with any of the three examiners chosen by the Director of the DOC. We reach this conclusion for several reasons. First, when section 9(c) refers to a respondent's refusal to cooperate with the State's examiner, the only examination mentioned to this point is the one mandated by section 9(a): the examination that takes place under the direction of the Director of the DOC. It would seem odd for the statute to spell out consequences for a respondent's refusal to cooperate with an examination that is never mentioned in the statute. We do not deem it remarkable that the legislature would refer to examiners under contract to the DOC as the "State's examiners." As the trial court stated when denying respondent's motion for appointment of an independent expert, "he gets the State psychiatrist, psychologist, etc., hired by the State of Illinois."

¶ 25 Second, and perhaps most importantly, if the State's construction of the statute is correct, that means that the legislature set forth *no* consequences for a respondent's refusal to cooperate with the evaluation mandated by section 9(a). According to the State, although section 9 requires only one evaluation—the one completed by three evaluators under the direction of the DOC—and this is the only evaluation that must be considered at the recovery hearing, the legislature set forth *no* consequences for a respondent's refusal to comply with that evaluation. But what the legislature *did* do was set forth specific consequences for a respondent's refusal to cooperate with an expert hired by the State—an expert that is mentioned nowhere else in the statute and will not even be called in most cases. So the legislature was apparently far more concerned with a respondent's refusal to cooperate with an adverse party's expert witness than with the evaluators whose report forms the very basis for a recovery proceeding. Such an interpretation obviously strains credulity. It is impossible to believe that in a recovery proceeding in which a respondent completely refused to cooperate with the DOC evaluation, but then sought to introduce a privately retained independent expert evaluation showing that he recovered, the State would agree that this procedure complied with the statute.

¶ 26 Third, when the legislature wants to grant the State the right to an independent psychiatric evaluation of a respondent, it knows how to do so. This court has previously construed the SDPA by looking to similar provisions of the Sexually Violent Persons Commitment Act (SVPA) (725 ILCS 207/1 *et seq.* (West 2014)). See, *e.g.*, *People v. Trainor*, 196 Ill. 2d 318, 336-38 (2001). In the section of the SVPA pertaining to petitions for conditional release, the legislature has included specific language providing the State the right to an independent expert: "The State has the right to have the person evaluated by experts chosen by the State." 725 ILCS 207/60(c) (West 2014). Thus, the legislature specifically grants this right when it

---

[1]This is no longer a problem. Section 9(a) has since been amended and now provides that "[t]he report shall be prepared by an evaluator licensed under the Sex Offender Evaluation and Treatment Provider Act." 725 ILCS 205/9(a) (West 2014).

wants the State to have it. We will not assume that this language in the SVPA means that the legislature would want the same right to exist in the SDPA, because the procedures under the two statutes are different. Under the section of the SVPA dealing with conditional release, on the court's own motion or on motion of the respondent, the court may appoint an examiner to evaluate respondent. *Id.* If such an examination occurs, it is in addition to the evaluation done by the DOC (see 725 ILCS 207/60(a) (West 2014)), and there is no requirement that a respondent show bias on the part of the DOC evaluator before petitioning for an independent examination. No corresponding right to petition for a court-appointed expert exists for respondents filing recovery petitions under the SDPA, unless they can demonstrate bias or prejudice on the part of the DOC evaluators. See *Burns*, 209 Ill. 2d at 574. Thus, it is easier to see the State's need for an independent examination in an SVPA conditional release proceeding than it is in a recovery proceeding under the SDPA.

¶ 27    The State acknowledges that the SDPA does not contain the express language that the SVPA does, but argues that this is not dispositive because, even before that language was added to the SVPA, the appellate court routinely affirmed trial court decisions permitting the State to retain its own expert witness in sexually violent persons proceedings. See *In re Commitment of Anderson*, 2014 IL App (3d) 121049, ¶ 23 (collecting cases). Unlike the appellate court, however, this court has not been willing to read silence regarding the right to have an independent psychiatric expert as tantamount to granting such a right. In *Burns*, one of the respondent's arguments was that, because the parties had a right to independent psychiatric examinations at an initial commitment proceeding under the SDPA, such examinations were also required in recovery proceedings. *Burns*, 209 Ill. 2d at 564. This court pointed out that, contrary to the respondent's argument, the SDPA did not give the parties a right to independent psychiatric evidence at an initial commitment proceeding. *Id.* at 565. Rather, section 4 of the SDPA provided only that a respondent would be evaluated by two psychiatrists appointed by the court. Therefore, this court concluded that "[n]othing in section 4 of the SDPA provides that a trial court must allow a respondent to retain his own independent psychiatric expert." *Id.* Thus, we will not read section 9's silence on the question of an independent psychiatric expert for the State as granting the State such a right.

¶ 28    The State next argues that, even if this court concludes that the plain language of section 9 does not give the State the right to an independent psychiatric expert, it must be allowed to retain one in cases in which it disagrees with the DOC evaluators' report. The State contends that this is so because it bears the burden of proof in a recovery proceeding, and the State cannot meet its burden without expert testimony. There is an obvious difference, however, between having the burden of proof in a case and being entitled to evidence to prove your case. The State cites no authority equating the former with the latter.

¶ 29    Moreover, in this particular case, it is not true that the State could not have met its burden of proof without expert testimony. The report itself provided a basis to argue that respondent had not recovered, and the State was able to cross-examine the DOC evaluators on this point. The report was clear that respondent did not cooperate with treatment and had not made progress during treatment. The report noted that respondent had previously been denied release on the basis of his inconsistent participation in treatment and that since that time "his level of participation has continued to be poor." The report also said that respondent was not "accepting full responsibility for the sex offenses and has made very little progress during treatment" and that the "treatment providers have reported that he has not made sufficient

progress in treatment." Thus, the State had a sound argument that, if it had already been determined that respondent was a sexually dangerous person in need of confinement, and respondent had not made progress in treatment, then there was no basis to release him. During cross-examination of Dale Spitler, the social worker who evaluated respondent, the State was able to bring out that he was recommending release despite the fact that respondent had done nothing to reduce the risk from his original commitment. At closing argument, the State explained to the jury why it disagreed with the report, and it explained why the report's conclusion was not justified by the contents of the report. Thus, even without Dr. Stanislaus's testimony, it is clear that the State had sufficient evidence to meet its burden of proof.

¶ 30 Finally, the State argues that, if it is allowed to have an independent expert only under the circumstances that this court delineated for respondents in *Burns*, then it made the requisite showing here. The appellate court was unwilling to say that there were no circumstances under which the State could seek an appointment of an independent expert. 2015 IL App (5th) 130416, ¶ 22. However, the court did not believe that the State could do so simply because it disagreed with the contents of the DOC report. *Id.* That court believed that the State could obtain appointment of an independent expert on the same grounds that a respondent could—*i.e.*, if it established bias or prejudice on the part of the DOC evaluators—but it would not be entitled to handpick the expert. *Id.* ¶¶ 23-24. The court noted that the State had not alleged—let alone demonstrated—that the DOC evaluators were biased against the State. *Id.* ¶ 23.

¶ 31 We see no need to determine whether, if an unusual circumstance occurred where the State could establish bias or prejudice on the part of the DOC evaluators, then it would be appropriate for the State to ask the court to appoint an independent expert. As the appellate court noted, even if the State does have the same right that respondents have to court appointment of an independent expert when it can establish bias or prejudice, the State would not be allowed to handpick its own expert, which is what happened here. The State's concession that it retained its handpicked expert rather than seeking court appointment of an independent expert defeats the State's argument on this point and renders any further discussion of it unnecessary.

¶ 32 In sum, while the SDPA quite clearly allows a respondent in a sexually dangerous persons proceeding to retain a private expert witness (see 725 ILCS 205/9(a), (c) (West 2012)), there is nothing in the plain language of the SDPA allowing the State to do so, and the SDPA must be strictly construed (see *Bruckman*, 33 Ill. 2d at 153-54). While on the surface this may seem to be unfair, there are several reasons why it is not. First, in a proceeding under the SDPA, it is the respondent's liberty interest that is at stake, so it is not surprising that the legislature would grant the respondent a right that is not granted to the State. Second, the experts that conduct the initial evaluation of a respondent are hired and paid for by an agency of the State of Illinois. Third, as this court has previously acknowledged, a respondent's right to hire private expert witnesses is largely theoretical:

> "Theoretically, a defendant could, on his own or with the help of privately retained expert witnesses, make a sufficient allegation in his petition to meet the present burden. However, a review of nearly half a century of case law interpreting the Act has failed to reveal such a hypothetical case." *Trainor*, 196 Ill. 2d at 339.

Saying that either the State of Illinois or a person incarcerated under the SDPA has the right to retain private experts when they disagree with the conclusions of the DOC evaluation hardly puts the parties on equal footing. Rather, what it means in practice is that the State will get to introduce private expert testimony whenever it disagrees with the DOC evaluation, and respondents almost never will. If this is what the legislature intended, it needs to say so clearly.

¶ 33 Having determined that the trial court's error in allowing the State to present independent psychiatric testimony requires a new trial, we see no need to address whether the trial court violated respondent's due process rights when it failed to appoint an expert for him after appointing one for the State.

¶ 34 Finally, we note that, in addition to the issue resolved in this appeal, respondent raised several other issues in the appellate court. Respondent argued that the trial court erred in denying his second motion *in limine*, which sought to preclude the testimony of certain witnesses; that the court failed to provide an instruction defining the State's burden of proof; and that the trial court erred in denying several of respondent's proposed jury instructions. The appellate court explained that it was not going to address these issues because it was reversing on the basis that the trial court erred in appointing an expert chosen by the State. 2015 IL App (5th) 130416, ¶ 11. Before declining to address these issues, the appellate court should have, in the interests of judicial economy, considered which ones were likely to occur on retrial. See *People v. Hari*, 218 Ill. 2d 275, 300 (2006). Therefore, although we affirm the appellate court's judgment, we remand to that court with directions to consider which of respondent's remaining issues are likely to occur on retrial and to address those issues accordingly.

¶ 35            CONCLUSION

¶ 36 For all of the above reasons, we affirm the judgment of the appellate court, which reversed the trial court's order finding that respondent remained a sexually dangerous person. We remand the cause to the appellate court with directions to address any of respondent's remaining issues that the court determines are likely to occur on retrial.

¶ 37 Affirmed.

¶ 38 Cause remanded with directions.