# Illinois Official Reports

## Appellate Court

---

### *People v. Bryant*, 2021 IL App (3d) 190530

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DMARLO QUARTEZ BRYANT, Defendant-Appellant. |
| District & No. | Third District<br>No. 3-19-0530 |
| Filed<br>Rehearing denied | August 17, 2021<br>September 9, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 18-CF-720; the Hon. Frank R. Fuhr, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part.<br>Cause remanded. |
| Counsel on Appeal | James E. Chadd, Thomas A. Karalis, and Dimitri Golfis, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Dora A. Villarreal, State's Attorney, of Rock Island (Patrick Delfino, Thomas D. Arado, and Jessica A. Theodoratos, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion.<br>Justices Holdridge and Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1 The defendant, Dmarlo Quartez Bryant, was convicted of one count of aggravated battery and three counts of aggravated domestic battery. The defendant appeals his aggravated domestic battery convictions.

¶ 2                                                I. BACKGROUND

¶ 3 The defendant was charged with seven battery offenses stemming from an incident that occurred on August 21, 2018. Count I charged aggravated battery to a child under the age of 13 years (720 ILCS 5/12-3.05(b)(1) (West 2018)), alleging that the defendant stabbed F.C. in the hands causing cuts and broken bones. Count II charged aggravated domestic battery (*id.* § 12-3.3(a)) to F.C. in that the defendant stabbed F.C. in the hands and thigh. Counts III and IV charged aggravated domestic battery to Tesah Hawk and Rachel Tunnell, respectively. Counts V and VI charged aggravated battery (*id.* § 12-3.05(f)(1)) to Tesah and Rachel, and count VII charged battery (*id.* § 12-3(a)(1)) to Tyler Thomas. The defendant waived a jury trial, and the case proceeded to a bench trial. The witnesses testified to the incident that occurred, which resulted in stab wounds to Rachel, Tesah, and F.C., and a bite wound to Tyler. On appeal, the defendant does not challenge the finding that he committed the stabbings. The relevant issue on appeal is the defendant's relationship to the victims.

¶ 4 Rachel testified that she lived in an apartment with her six-year-old grandson, F.C., and her son, Zachary. Zachary's girlfriend, Tesah, also stayed at Rachel's apartment a few days a week. Rachel met the defendant shortly before August 21, 2018. Rachel testified that she did not feel like she and defendant were dating, but they did have a sexual relationship. According to Rachel, the defendant, who had been living in a hotel, asked if he could come and stay with Rachel in exchange for helping out with some bills. Rachel agreed, and the defendant was dropped off at her apartment on Saturday, August 18, 2018. The defendant had some clothes at her apartment, which Rachel thought could possibly be all the defendant's clothing.

¶ 5 Rachel testified that the defendant did not go to work on Monday or Tuesday, and on Tuesday, August 21, when the defendant was out of the apartment, Rachel sent the defendant a message saying that things "weren't going to be what we thought they were going to be." When he returned, the defendant let himself in and went to the kitchen and heated some food in the microwave. The defendant then came into the living room where Rachel and F.C. were. The defendant punched the wall and spit in Rachel's face. Rachel texted Zachary to return, and Zachary came back and asked the defendant to leave. Zachary and the defendant started fighting, which led to the stabbing incident.

¶ 6 Tesah testified that she had been staying or living with Rachel, Zachary, and F.C. a few days a week for a month. Tesah had only known the defendant a few days prior to August 21. Zachary testified that, on August 21, he lived with his mother, Rachel, at Rachel's apartment along with F.C. Zachary's girlfriend, Tesah, stayed at the apartment with him "here and there." Zachary would watch F.C. when Rachel went to work. On August 21, Zachary was at Tyler's home, hanging out and playing video games. Zachary picked up the defendant and brought him to Tyler's house and then brought the defendant back to Rachel's apartment. About 20 minutes later, Zachary received a text from Rachel saying that she was scared, so Zachary returned to the apartment. Tesah and Tyler went to Rachel's apartment with Zachary. Zachary walked into the living room and saw a hole punched in the wall and food all over the couch.

Zachary told the defendant that the defendant had to leave, and the defendant grabbed Zachary's wrist. Zachary punched the defendant, the defendant fell, and then Zachary went outside. When Zachary reentered the apartment, the defendant was fighting with Tyler. Rachel, Tesah, and F.C. were stabbed by the defendant.

¶ 7 The defendant testified that he had met Rachel on Facebook. He went to Rachel's apartment on Saturday, August 18, because Rachel had told the defendant that she could give him a ride to a motel where he could arrange a ride to work with a coworker. However, once the defendant arrived at Rachel's apartment, Rachel informed the defendant that her vehicle had been impounded and she could not give him a ride to the motel. The defendant testified that "the small things [he] had[,] which consisted of [his] work clothes," he brought to Rachel's apartment. The defendant offered to possibly help pay to get Rachel's vehicle out of impound, but it had not happened at the time of the incident on August 21. The defendant testified that he did not have a relationship with Rachel, but they did have sexual relations. The defendant testified that he bought a few groceries, cooked some food, and he and Rachel hung out over the weekend. The defendant and Rachel took F.C. to the park on Monday, and the defendant bought F.C. snacks. The defendant described he and Rachel as two adults helping each other, but the defendant did not intend to stay long-term at Rachel's apartment. On Tuesday, August 21, 2018, the defendant testified that after he had left the apartment, he received a call from Rachel saying that it was not going to work out. After he was dropped off, the defendant sat outside texting for a little while, trying to arrange a ride back to Rock Island. The defendant then walked up to the door and felt that he should have been able to walk right in because he had been there a few days. But, according to the defendant, the door was locked, and he had to knock. The defendant testified that the door opened and he was immediately punched in the face. Then the altercation occurred that resulted in the stab wounds to Tesah, Rachel, and F.C.

¶ 8 The trial court found the defendant guilty as charged in counts I through VI. In its oral pronouncement, the trial court sentenced the defendant to 10 years imprisonment on count I (aggravated battery to a child), 7 years on count II (aggravated domestic battery to F.C.), 5 years on count III (aggravated domestic battery to Tesah),[1] and 5 years on count IV (aggravated domestic battery to Rachel), all to run concurrently. The court found that counts V and VI were lesser offenses that merged with the greater offenses in counts III and IV. The written sentencing order that followed, however, causes some confusion because it omits count II (and its associated seven-year sentence) and indicates the defendant's sentence on count IV is seven years rather than five years. The defendant appealed his aggravated domestic battery convictions (counts II, III, and IV), contending that the State failed to prove that the defendant was a family or household member of Rachel, Tesah, or F.C. The defendant did not appeal his conviction for count I, aggravated battery to a child under the age of 13 years.

¶ 9 II. ANALYSIS

¶ 10 The defendant argues that his aggravated domestic battery convictions should be reversed because the State failed to prove that the defendant and each of the three victims were family

---

[1]The trial court correctly noted that count V merged into count III, and count VI merged into count IV, but then went on to sentence the defendant on "Counts IV and V" rather than counts III and IV. The mittimus also contains this error. We find that, in the context of sentencing the defendant on the two aggravated battery counts as to the adults, the trial court simply misspoke.

or household members. The State concedes that there was not enough evidence in the record to establish beyond a reasonable doubt that defendant could be considered to have shared a common dwelling with Tesah, and therefore the State failed to establish at trial that defendant was a family or household member of Tesah. Accordingly, the State requests that this court vacate the defendant's aggravated domestic battery conviction (count III) and remand to the trial court for sentencing on defendant's aggravated battery conviction (count V).

¶ 11    When considering issues concerning the sufficiency of the evidence, the standard is whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime beyond a reasonable doubt. *People v. Almore*, 241 Ill. 2d 387, 394 (2011).

¶ 12    The defendant was convicted of aggravated domestic battery in violation of section 12-3.3(a) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/12-3.3(a) (West 2018)). That section provides that "[a] person who, in committing a domestic battery, knowingly causes great bodily harm, or permanent disability or disfigurement commits aggravated domestic battery." *Id.* A person commits a domestic battery if he knowingly "[c]auses bodily harm to any family or household member." *Id.* § 12-3.2(a)(1). Section 12-0.1 of the Criminal Code defines " '[f]amily or household members' " as including

> "spouses, former spouses, parents, children, stepchildren, and other persons related by blood or by present or prior marriage, persons who share or formerly shared a common dwelling, persons who have or allegedly have a child in common, persons who share or allegedly share a blood relationship through a child, persons who have or have had a dating or engagement relationship, persons with disabilities and their personal assistants, and caregivers as defined in Section 12-4.4a of this Code. For purposes of this Article, neither a casual acquaintanceship nor ordinary fraternization between 2 individuals in business or social contexts shall be deemed to constitute a dating relationship." *Id.* § 12-0.1.

¶ 13    The defendant contends that he and Rachel did not have a dating relationship and that the defendant did not share a common dwelling with F.C., Tesah, or Rachel. Since the definition of family or household member includes both categories of relationship, the State only needed to prove one of these bases to convict the defendant of aggravated domestic battery. See *id.*

¶ 14    Sharing a common dwelling means "to stay in one place together on an extended, indefinite, or regular basis." *People v. Young*, 362 Ill. App. 3d 843, 849 (2005) (interpreting the same definition of " '[f]amily or household members' " contained in section 112A-3(3) of the Code of Criminal Procedure of 1963 (725 ILCS 5/112A-3(3) (West 2002)). Factors that may be considered in deciding whether parties shared a common dwelling include the length of time the parties resided together, "the nature of the living arrangements, whether the parties had any other living accommodations; whether they kept personal items at the shared residence; and whether the parties shared in the privileges and duties of a common residence, such as contributing to household expenses or helping with maintenance." *Almore*, 241 Ill. 2d at 396 (also interpreting section 112A-3(3)).

¶ 15    The defendant argues that he only spent three nights at Rachel's apartment and, although he had some clothes there, he did not intend to stay long-term. It does not seem that the defendant slept in Rachel's bed, only using the room for their sexual encounters. Before going to Rachel's apartment, the defendant had been living in a hotel. The State argues that Rachel and the defendant were sharing a common dwelling: the nature of the living arrangement was

sexual in nature and the defendant chose to stay there rather than a hotel; the defendant kept his clothes at Rachel's and nothing in the record suggested that defendant had any other personal items; and the defendant contributed to the household expenses by buying groceries, buying F.C. snacks while on outings, and promising to pay for Rachel's vehicle to be returned.

¶ 16       We find that the evidence was sufficient to establish that the defendant shared a common dwelling with Rachel and F.C. While the defendant had only stayed at Rachel's apartment for a few days before the stabbing incident occurred, the evidence was sufficient to show that the defendant intended to reside there for at least an indefinite period of time. The arrangement was shortened by the defendant's actions when he did not go to work after the weekend and then, of course, by the stabbings. The evidence showed that the defendant had no other current living accommodations, and he had all of his belongings with him at Rachel's apartment. The defendant and Rachel had a sexual relationship, and the defendant contributed by purchasing some food while staying at Rachel's apartment. The language used by the legislature in the statute is broad in an attempt to capture all of the various types of familial relationships where domestic abuse might arise. *Id.*; see *People v. Taylor*, 381 Ill. App. 3d 251, 259 (2008) (the court found the evidence sufficient to find that the defendant and the victim were family or household members because they had a dating relationship of the kind in which problems of abuse might arise).

¶ 17       Since we have found that the evidence was sufficient to establish that the defendant shared a common dwelling with Rachel and F.C. for purposes of the aggravated domestic battery statute, we need not address whether the defendant also had a dating relationship with Rachel. We affirm the defendant's aggravated domestic battery conviction as to Rachel (count IV). We reverse the defendant's aggravated domestic battery conviction as to Tesah (count III) and vacate the associated five-year sentence. Since the defendant was convicted of aggravated battery as to Tesah (count V), but it was merged into count III as a lesser included offense, we reinstate the aggravated battery conviction as to Tesah and remand for resentencing on count V. On remand, the trial court should also amend the mittimus and the sentencing order to reflect the correct convictions and sentences for counts II and IV. See *People v. Jones*, 376 Ill. App. 3d 372, 395 (2007) (oral pronouncement controls when there is a conflict).

¶ 18                                    III. CONCLUSION

¶ 19       The judgment of the circuit court of Rock Island County is affirmed in part, reversed in part, and remanded with directions.

¶ 20       Affirmed in part and reversed in part.

¶ 21       Cause remanded.